700 P.2d 959

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Linda Belle HAYES,
Defendant-Appellant.**

No. 15117.

Court of Appeals of Idaho.

May 30, 1985.

Petition for Review Denied
July 26, 1985.

John S. McKinney, Salmon, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

SWANSTROM, Judge.

Linda Belle Hayes was charged with driving under the influence of alcohol, I.C. § 49-1102. Following trial, the magistrate dismissed the charge under I.C.R. 48 "in the interest of justice" because the arresting officers, by failing to administer a blood-alcohol test, acted in an arbitrary manner "which did effectively violate the Defendant's right to equal protection under the law." The state appealed and the district court reversed, holding that the complaint "was not properly subject to a dismissal" because the actions of the officers did not deny Hayes due process of law. Hayes then appealed. We affirm the district court's decision.

Hayes raises several issues on appeal. The first two issues concern alleged procedural errors committed by the district court in the appeal from the magistrate's order: (1) whether the district court could reverse the magistrate's order without first determining that the magistrate abused his discretion; (2) whether the district court erred in prematurely deciding the appeal without waiting for oral argument. The next four issues we will discuss concern the substantive aspects of this case: (1) whether the trial court acted within the scope of authority afforded it under I.C.R. 48 in dismissing the action; (2) whether a person accused of driving under the influence has the right to a chemical test of the body's alcohol content; (3) whether Hayes' right to equal protection under the law was violated; and (4) whether Hayes' due process rights were violated.

The facts are as follows. In the wee hours of September 12, 1982, Linda Hayes set out for home after spending the previous hour and a half at the Owl Club. Unfortunately for Hayes, a couple of Salmon City Police officers, on duty at one point along her route, clocked her going forty in a twenty-five mile per hour zone. They pursued her to her home where she finally came to a stop. There, in her driveway, the critical events began to happen. Engaging Hayes in conversation, the officers soon came to the conclusion that she was intoxicated. According to their testimony at trial, Hayes failed two field sobriety tests—an alphabet test and a physical dexterity test. The officers further testified that Hayes was crying, swaying, screaming and generally being uncooperative. They allegedly detected the distinct odor of alcohol about her person. Hayes denies all these characterizations. She claims to have imbibed only two drinks during her sojourn at the Owl Club and offers up a variety of reasons to explain her appearance and her actions. In any event, the net result was Hayes' arrest for driving under the influence of alcohol. She was transported to the sheriff's office and placed in the jail.

Shortly after her incarceration, Hayes called out to the police officers. She told the arresting officer "she would blow up a balloon if she could be released." The balloon she referred to is an integral part of the Mobat breath test, then in use in Salmon. The procedure for administering this test is simple and painless. A person suspected of being intoxicated is instructed to

blow up a balloon and the breath collected therein is passed through chemicals which can be analyzed to determine alcohol content. The officers, who had not administered a Mobat test to Hayes during the original encounter in her driveway, now refused her request. They testified that their failure to give her such a test when she was originally stopped and their refusal to accept her request at the jail were based upon past experience with Hayes. Apparently she had previously been accused of the same offense two or three times. On one or two of those occasions, she was unable to generate enough lung power to inflate the balloon adequately for testing; on one other occasion, she succeeded in blowing up a balloon, only to fail the test and suffer a conviction.

Hayes filed a motion under I.C.R. 48 for a dismissal of the charge against her. The magistrate denied the motion, citing the paucity of facts relating to the administration of Mobat tests by the Salmon police department. He suggested a number of questions which would need to be answered before he could grant such a motion and noted that Hayes would be allowed to refile the motion after trial in the event she was convicted. Following trial, the magistrate issued a decision; but, instead of reaching the merits, the magistrate granted the motion to dismiss.[1] He said:

> From the above facts, it is the Court's decision that the citation shall be dismissed under Rule 48 in the interest of justice. The officers['] decision to not administer a mobat test was an arbitrary act which did effectively violate the Defendant's right to equal protection under the law.
>
> Assuming for argument that the Defendant could not have blown up the mobat balloon, the monetary loss to the State would have been less then [sic] $5.00. Furthermore, the fact of the Defendant's failure to complete the test would have been admissable [sic] against the Defendant.

The Court feels that it would be patently unfair for a Defendant to be subject to sanctions such as loss of a driver's license for refusal to take a mobat test, to hold that the officers may arbitrarily decide who can and cannot attempt to pass the test.

Therefore, the proper remedy in this matter is for the citation to be dismissed.

The state appealed. On May 10, the district court, acting in its appellate capacity, set a date for oral argument. At the appointed time, all were present save the district judge. On June 7 the district court filed its memorandum opinion, incongruously dated May 2, reversing the magistrate's order. The court stated:

> An annotation at 95 ALR3d 710 confirms this result in concluding: "The Courts have uniformly rejected the contention of the motorist that he was denied due process of law by the law enforcement officer's failure to offer him a chemical sobriety test, and have held that there is no obligation to test the blood of an accused in all cases in which the motorist is arrested for driving under the influence of intoxicating liquor."
>
> A state may have the duty to reveal exculpatory evidence, it does not have the responsibility to discover it.
>
> Based on this authority, the complaint against the defendant, Hayes, was not properly subject to a dismissal, and the judgment of the Magistrate is hereby reversed.

This time Hayes appealed.

## I. PROCEDURAL ISSUES

Hayes contends, with some justification, that she should have been afforded the opportunity for oral argument before the district court and that, in any event, the court should not have written its decision prior to setting the date for oral argument. *See* I.C.R. 54(s). *Cf.* I.R.C.P. 83(w). She also maintains that the district court erred by not explicitly finding the magistrate abused his discretion in dismissing the case

---

**1.** It is unclear whether the motion to dismiss under I.C.R. 48 was renewed at the close of trial, but both parties treat it as if it were. So shall we.

under I.C.R. 48. The record does not provide an explanation for the date placed on the district court's memorandum decision. Perhaps it is only a typographical error. The failure of the district court to allow oral argument before deciding the appeal is also unexplained. The state admits that the court's conduct was, in some ways, technically erroneous. Nevertheless, this does not entitle Hayes to relief.

▉ When a district court acts in its appellate capacity in a civil case and reaches its decision on the basis of the record before it, "we may review the record independently of the decision of the district court." *Olson v. Ada County*, 105 Idaho 18, 20, 665 P.2d 717, 719 (1983); *see also Nicholls v. Blaser*, 102 Idaho 559, 633 P.2d 1137 (1981). There is no reason why this same standard should not be applied in a criminal case. Accordingly, we review the magistrate's order in part II of this opinion, independently of the district court's decision. We note that Hayes has been afforded the right to fully argue her case before this court—the right allegedly denied her by the district court. It would serve little purpose to now remand the case to the district court for oral argument after argument has already been presented to this court. Hayes has failed to show that she was prejudiced by the procedural errors. The errors, therefore, will be deemed harmless. *See State v. Rodriquez*, 106 Idaho 30, 674 P.2d 1029 (Ct.App.1983).

## II. SUBSTANTIVE ISSUES

Hayes contends that a trial judge has broad discretion to dismiss a case under I.C.R. 48. She urges us to establish just how broad this discretion is and hold that the magistrate here did not abuse his discretion in dismissing the case. We decline, however, to define the limits of a judge's discretion under rule 48. On its face, the rule requires a judge who dismisses a case in order to "serve the ends of justice" to "state in the order of dismissal [his] reasons for such dismissal." I.C.R. 48(b). An

order stating only that the case was dismissed "to serve the ends of justice" would be insufficient. Here the magistrate did state his reason—he dismissed the case "in the interest of justice" because he believed Hayes' right to equal protection under the law had been violated. The magistrate thus did not exceed the scope of his authority under rule 48. His reason, however, is not borne out by the record, as we discuss below. Without a valid reason supporting the decision to dismiss, the magistrate's order cannot be upheld.

▉ The next contention raised on appeal concerns whether a person accused of driving under the influence has a right to be given a Mobat test. The statutes relating to chemical tests of motor vehicle operators applicable at the time did not *require* that any test be given. *See* former I.C. § 49–352 (now repealed) *et seq.; see also State v. Reyna*, 92 Idaho 669, 448 P.2d 762 (1968) (holding that I.C. § 49–355, now repealed, did not impose an obligation upon the state to test the blood of all accused of driving under the influence).[2] The United States Constitution also does not require a state to administer a chemical test for intoxication on demand. *See Scarborough v. Kellum*, 525 F.2d 931 (5th Cir.1976); *see generally* Annot., 95 A.L.R.3d 710 (1979). Due process requires only that the police give a person accused of driving under the influence a "reasonable opportunity to attempt to procure a timely sample," through his own efforts and at his own expense. *In re Newbern*, 175 Cal.App.2d 862, 1 Cal. Rptr. 80, 83 (1959); *see generally* Annot., 78 A.L.R.2d 905 (1961). In the present case, Hayes offered to take a test if she could be released, but did not request the opportunity to obtain her own test. The refusal of the police to give her a test on demand did not infringe upon her right to due process.

▉ Hayes, however, argues that the right exists by reason of a policy of the Salmon City Police to give a Mobat test to

---

**2.** The present statutes relating to operation of vehicles while intoxicated and to the giving of

tests for alcohol content are compiled in chapter 80, title 18, Idaho Code.

everyone accused of driving under the influence. If indeed such a policy exists, the equal protection clause would prohibit the discriminatory application of this policy. The policy was unwritten. The Chief of the Salmon City Police testified that he never told his officers they *must* give the test to everyone—the decision was left in the hands of the officer at the scene. At the most, there was a "practice" of giving a Mobat test to everyone accused of driving under the influence. The test was, in fact, administered in the vast majority of cases. The question is whether a right to be given a Mobat test was created under these circumstances. If there is no right, there can be no infringement of a right and thus no violation of the equal protection clause. *See* Tussman and tenBroek, *The Equal Protection Of The Laws*, 37 Cal.L. Rev. 341, 364 (1949). Even if we will assume that some "right" to be given a Mobat test is vested in everyone accused of driving under the influence by the Salmon City Police, nevertheless, we hold there was no infringement of that right sufficient to constitute a violation of the equal protection clause.

■ Hayes contends that her right to equal protection under the laws was violated when the police discriminatorily first failed and then refused to give her a Mobat test. The guaranty of equal protection under the laws has been defined "to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in the pursuit of happiness." *People v. Romo*, 14 Cal.3d 189, 121 Cal.Rptr. 111, 534 P.2d 1015, 1020 (1975). In other words, "[t]he equal protection clause of the fourteenth amendment is designed to assure that those persons *similarly situated* with respect to a governmental action should be treated similarly." *Smith v. State*, 646 P.2d 1285, 1287 (Okla. Crim.App.1982) (emphasis added).

"[T]o establish an instance of discriminatory application of the laws such that equal protection standards have been violated, there must first be shown a deliberate plan of discrimination based on some unjustifiable" or arbitrary classification. *Henson v. Dept. of Law Enforcement*, 107 Idaho 19, 23, 684 P.2d 996, 1000 (1984). We will not decide whether there was a deliberate plan of discrimination practiced by the Salmon City Police. Rather, we examine the classification which necessarily forms the basis of any such plan. There has been no allegation of discrimination based on an unjustifiable classification such as race, sex or religion. Thus, a deliberate plan of discrimination, to violate the equal protection clause, must be based upon an arbitrary classification. We hold, however, there was nothing arbitrary in failing or refusing to give a Mobat test to Hayes under the circumstances of this case.

The magistrate found the following facts to have been established by the record. Hayes failed an alphabet test and physical dexterity test administered by the arresting officers at the time and place of the arrest. She was not offered a Mobat test at that time because on one or two previous occasions she had been unable to blow up the balloon, which is an indispensable requirement of the test. Hayes had managed to blow up a balloon on one previous occasion. Finally, sometime after she was transported to jail, Hayes indicated she would take a Mobat test if she could be released from jail. The magistrate held that the failure or refusal to administer a Mobat test under these circumstances was "arbitrary."

"An arbitrary act is one done without any apparent reason therefor." *Verdugo Hills Hospital, Inc. v. State Dept. of Health*, 88 Cal.App.3d 957, 152 Cal.Rptr. 263, 267 (1979). "Arbitrary means without rational basis. Action is not arbitrary when based on a candid judgment of the facts." *Powers v. Fisher Controls Company, Inc.*, 246 N.W.2d 279, 282 (Iowa 1976). It is also recognized that "[t]he term 'arbitrary' has been variously defined, but in general is defined as willful and unreasoning action, without consideration and regard for the facts and circumstances

presented, and without adequate determining principle." *In re West Laramie*, 457 P.2d 498, 502 (Wyo.1969). Applying the gist of these definitions to the facts of this case, we hold that the failure or refusal to give Hayes a Mobat test was not arbitrary, as a matter of law. The officers had concrete reasons for failing and later refusing to give Hayes a Mobat test. Their reasons were neither irrational nor unreasoning.

 Finally, Hayes contends she was denied due process by the failure of the police to "preserve" allegedly exculpatory evidence. Hayes alleges that a Mobat test would have shown she was *not* intoxicated and that the failure to "preserve" this evidence—i.e., to give her a Mobat test—amounted to an unconstitutional suppression of evidence by the state. We disagree. "The duty of the prosecution to disclose evidence necessarily includes the duty to use earnest efforts to preserve evidence for possible use by a defendant." *State v. Wells*, 103 Idaho 137, 139, 645 P.2d 371, 373 (Ct.App.1982). There is a difference, however, between "preserving" evidence already in the possession of the state and "gathering" evidence seemingly available to the police. *Id.* The administration of a Mobat test clearly falls in the category of "gathering" evidence, much like the fingerprint and footprint evidence which allegedly should have been gathered in *Wells*. Hayes' due process rights were therefore not violated by the failure of the Salmon City Police to gather evidence via a Mobat test. *See State v. Reyna*, 92 Idaho 669, 448 P.2d 762 (1968); *Scarborough v. Kellum*, 525 F.2d 931 (5th Cir.1976). *Cf. California v. Trombetta*, — U.S. —, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (holding that the defendant's due process rights were not violated by the destruction of breath samples collected with an Omicron Intoxilyzer—the results of such tests were admissible despite the destruction of the samples).

The decision of the district court, reversing the magistrate's order which dismissed the charge of driving under the influence against Linda Belle Hayes, is affirmed.

The cause is remanded to the magistrate's division for proceedings consistent with the opinion.

WALTERS, C.J., concurs.

BURNETT, J., concurs in result.