**Tammie Downs GRAHAM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 227–84.**

Court of Criminal Appeals of Texas, En Banc.

May 28, 1986.

---

Robert Udashen, Dallas, for appellant.

H. Ownby, Dist. Atty., and Donald Davis, Asst. Dist. Atty., McKinney, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

Tammie Downs Graham, hereinafter referred to as the appellant, was tried and convicted by a jury of committing the misdemeanor offense of driving while intoxi-

cated on April 20, 1982. The trial judge assessed punishment at 30 days' confinement in the Collin County Jail, probated for 2 years, and also assessed a $300 fine. The Dallas Court of Appeals affirmed. See *Graham v. State*, 665 S.W.2d 832 (Tex.Cr. App.1984). We reverse the judgment of the court of appeals, and remand the cause to the trial court.

In affirming the appellant's conviction, the court of appeals rejected the appellant's contention that the trial judge erred when he permitted the arresting officer to testify over objection that he had seen persons who were less intoxicated than the appellant fail the intoxilyzer test.[1] We will reverse this part of the court of appeals decision. The court of appeals also rejected the appellant's contention that her right to due process of law, as guaranteed by both the Federal and State Constitutions, was violated because the arresting officer did not honor her acceptance of his offer to take the intoxilyzer test. We will affirm this part of the court of appeals decision.

The evidence adduced established that during the early morning hours of the day in question, Plano police officer Gary D. Wigley, who by his own admission was not qualified to operate the intoxilyzer device or to administer the test, much less translate or interpret the results of the test, arrested the appellant for driving her motor vehicle while intoxicated. Wigley thereafter took the appellant to the Plano police station house.

Wigley testified that from the time he arrested the appellant until he arrived with her at the station house he asked the appellant at least five times if she would take the breath test, but she told him each time that she would not take the test. Notwithstanding the fact that the appellant told Wigley that she was not going to take the test, Wigley nevertheless made efforts to obtain the services of a qualified intoxilyzer operator. He was unsuccessful. After

Wigley and the appellant arrived at the station house, Wigley again asked the appellant if she would take the test. This time she agreed to take the test. Wigley thereafter made another effort to locate a competent operator of the device, but again was unsuccessful. The appellant was never administered the test.

Kathy Perdue, another Plano police officer, who was the videotape operator at the Plano police station house on the morning in question, testified that she first observed the appellant in the videotaping room of the Plano police station. Notwithstanding the fact that the appellant was in the presence of Perdue for some period of time, Perdue was unable to form an opinion whether or not the appellant was then intoxicated. Even after Perdue later viewed the videotape she was still unable to form an opinion whether the appellant was intoxicated.

David Wayne Lamb, a chemist and toxicologist employed by the Department of Public Safety, who by the record had never before seen the appellant prior to when he saw her in the courtroom, also viewed the videotape, but after doing so he, too, was unable to form an opinion whether the appellant was at that time intoxicated.

Thus, from the above, it is easily seen that the only testimony pertaining to the appellant's state of intoxication came from Wigley. Contrary to Wigley's testimony, the appellant and her witnesses testified that she was not intoxicated on the morning in question.

The appellant complained on appeal that Wigley should not have been permitted to testify that he had seen persons who were less intoxicated than she appeared to him to be fail the intoxilyzer test. The court of appeals held that because appellant's counsel did not object after the prosecuting attorney reasked his question, nothing was

---

1. The intoxilyzer is a device used to measure the concentration of alcohol in a person's blood through the use of a breath sample. For further information on this device, see *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); Erwin, *Defense of Drunk Driving Cases: Criminal-Civil* (1984 edition); Frajola and Tarantino, *Defending Drinking Drivers* (1985 edition); Taylor, *Drunk Driving Defense* (1981 edition).

preserved for review. We are unable to agree with the court of appeals.

The record on this point reflects the following:

Q (By Mr. Davis, the prosecuting attorney): Have you seen people that were more intoxicated than Ms. Graham?

A (By Wigley): Yes, sir.

Q (By Davis): Have you seen people that were less intoxicated?

A (By Wigley): Yes, sir.

Q (By Davis): Have you seen people that were less intoxicated than Ms. Graham take an intoxilyzer test?

A (By Wigley): Yes, sir.

Q (By Davis): Have you seen people that were less intoxicated than Ms. Graham flunk an intoxilyzer test?

Mr. Udashen (appellant's counsel): Your Honor, I object. That calls for speculation. And there's no definition really of what is less or more intoxicated than Ms. Graham. The officer had no basis of saying whether she would or would not have passed an intoxilyzer test if she had been given one.

(By Davis): Your Honor, he certainly does know all those things. *He's* arrested scores of people and *given tests to many of them.* It's all within his personal knowledge. He can make a valid comparison. (Our emphasis.)

(By Udashen): He's not the one to give the test. *He's not a qualified operator.* And not qualified to make that type of judgment. (Our emphasis.)

THE COURT: I think he's being asked whether or not based upon appearances of people he's seen, whether they had passed or failed the test based on their appearances. I'll let him answer based on the tests he's observed.

(By Davis): Based on your own experiences in individuals you've seen taking the test, have you seen people that were less intoxicated than Ms. Graham take and fail the intoxilyzer test?

(By Wigley): Less intoxicated than her, or appeared less?

(By Davis): Yes, sir.

(By Wigley): Yes, sir.

Contrary to the trial judge's observation, our research has yet to reveal any authoritative legal or medical work in which it is stated that the result that an intoxilyzer device might give can be based solely upon one's appearance.

Counsel for the appellant was quite correct in stating that Wigley was not qualified to administer the intoxilyzer test. Davis, the prosecuting attorney, in making the statement that Wigley had "given tests to many of [the persons he had arrested]", apparently forgot that Wigley had previously testified that he was not qualified to give the intoxilyzer test.[2]

We are unable to agree with the court of appeals that the error was not preserved for appellate review.

█ Given the above colloquy, we believe that it would have been rather futile for the appellant's attorney to have repeated his objection to Davis' first question, "Have you seen people that were less intoxicated than Ms. Graham flunk an intoxilyzer test?", or to have made another objection to Davis' second question, "Based on your own experiences in individuals you've seen taking the test, have you seen people that were less intoxicated than Ms. Graham take and fail the test?", in light of the fact that the trial judge had just overruled his objection to the first question, and had also stated that Wigley would be permitted to give his opinion "whether or not based upon appearances of people he's seen, whether they had passed or failed the test based on their appearances." Given all of the above, it is clear to us that the trial judge gave Davis the green light to put before the jury Wigley's testimony that he, Wigley, had in the past seen persons who appeared to have been less intoxicated than the appellant appeared to him on the morning in question take and fail the test.

2. Whether Wigley ever took any training to operate the intoxilyzer device or ever attempted to give the test is not reflected in the record of appeal.

We find and hold that the error was preserved for appellate review purposes. See *Zillender v. State*, 557 S.W.2d 515 (Tex.Cr. App.1977); *Robinson v. State*, 550 S.W.2d 54, 59 (Tex.Cr.App.1977).

We also find and hold that by the second question that Davis, the prosecuting attorney, asked, and the answer that Wigley gave, the jury could have easily formed the impression that it was encouraged to speculate that had the appellant taken the intoxilyzer test she would have failed it.

■ In Texas, before the results of a breath test become admissible evidence, certain pre-requisites must first be satisfied. These are: "(1) the use of properly compounded chemicals; (2) the existence of periodic supervision over the machine and operation by one who understands the scientific theory of the machine; (3) proof of the result of the test by the witness or witnesses qualified to translate and interpret such result so as to eliminate hearsay." Failure to prove all of these elements renders opinion testimony concerning *the results* of the test inadmissible evidence. *French v. State*, 484 S.W.2d 716, 719 (Tex.Cr.App.1972); *Gilder v. State*, 474 S.W.2d 723 (Tex.Cr.App.1972); *Palafox v. State*, 509 S.W.2d 846 (Tex.Cr.App.1974); *Hill v. State*, 158 Tex.Cr.R. 313, 256 S.W.2d 93 (1953). Also see *California v. Trombetta*, supra; R. Ray, 2 *Texas Practice, Law of Evidence*, Section 1430; Annot., "Qualification as expert to testify as to findings or results of scientific test to determine alcoholic content of blood," 77 *ALR2d* 971.

■ By his own admission, Wigley was not qualified to operate the intoxilyzer device or administer the test, much less translate and interpret the results of the machine. Nor was he shown to be a chemist. Nor was he shown to have ever been instructed in the analysis or preparations of chemicals used in the test. In sum, Wigley was not shown to know anything about the device as to its operation or what causes it to give a particular result. Nevertheless, he was permitted to testify that he had in the past observed persons he had arrested take and fail the test who appeared to be less intoxicated than the appellant did on the morning in question—thus leaving the jury with the impression that if the appellant had taken the test she would have failed it.

We hold that the trial judge erred in permitting Wigley to express his opinion that he had in the past seen "people that were less intoxicated than Ms. Graham take and fail the intoxilyzer test", because he was not shown to be qualified to express an expert opinion on the subject of comparison between the particular test result that a given person had sustained and the relative state of intoxication between that person and the appellant. For further discussion on how a person might qualify to give such an expert opinion, see *Holloway v. State*, 613 S.W.2d 497, 501 (Tex.Cr.App. 1981); R. Ray, Law of Evidence, 2 *Texas Practice*, Section 1400.

Having concluded that the trial judge erred, we must next decide whether the error was harmless.

■ In making the determination whether error was harmless to the appellant, the test is not whether a conviction could have been had without the improperly admitted evidence, but, instead, is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *Maynard v. State*, 685 S.W.2d 60 (Tex.Cr.App.1985).

We first observe that the testimony that was presented that concerned appellant's presence in the station house was extremely weak to support the conclusion that she was then intoxicated. As previously pointed out, although Perdue, the videotape operator, was in the appellant's presence for some time, she was unable to form an opinion whether the appellant was then intoxicated. Even after viewing the videotape, Perdue still could not give an opinion whether the appellant was then intoxicated. Even after viewing the videotape, the State's expert witness Lamb, a chemist and toxicologist employed by the Department of Public Safety, was unable to form an

opinion whether the appellant was then intoxicated.

The testimony that concerned the time from when the appellant was arrested until she arrived at the station house boils down to a swearing match between Wigley and the appellant and her witnesses.

■ Given the above facts and circumstances, we are unable to conclude that there is not a reasonable possibility that the prejudicial effects of the erroneously admitted testimony of Wigley affected the guilt stage of the appellant's trial.

Although we have found reversible error, we will nevertheless address the appellant's other contention that the court of appeals erred in overruling her contention that her due process rights were violated when Wigley did not honor the agreement she made with him at the station house to take the intoxilyzer test. We agree with the court of appeals that such contention is without merit.

■ As previously pointed out, between the time that Wigley arrested the appellant until they arrived at the station house, he asked the appellant at least five times if she would take the test but each time she refused. Wigley nevertheless still made diligent efforts to obtain a qualified operator of the intoxilyzer device to meet him at the station house just in case the appellant changed her mind. Wigley's efforts were unsuccessful. At the station house, the appellant changed her mind and agreed to take the test. Wigley thereafter made another effort to find a qualified operator who would come to the station house to give the appellant the test, but was again unsuccessful. The appellant was never administered the test.

The appellant argues that she was denied due process of law because she was not administered the test after she had agreed with Wigley to take it at the station house. Given the facts and circumstances of this cause, we are unable to agree with appellant.

Under the law in effect at the time when the appellant agreed to take the test, a person accused of committing the offense of driving while intoxicated had the right to obtain an independent alcoholic content test of his own choice, but such could occur only after he had first submitted his specimen to the police. See Art. 6701*l*–5, Section 3(d), V.A.C.S. The law also provided that if a person who had been accused of committing the offense of driving while intoxicated requested that he be given an alcoholic content test, but such request was refused, and the person was later put on trial, the trial judge should admit such evidence during the trial for the trier of fact to give it whatever weight it chose to give it. See Art. 6701*l*–5, Sec. 3(f), V.A.C.S.

Not too long ago, the Fifth Circuit Court of Appeals had occasion to address the question whether the Federal Constitution required state authorities to administer at state expense on demand of the accused person a chemical test to ascertain whether he was intoxicated. The Fifth Circuit answered the question in the negative. See *Scarborough v. Kellum*, 525 F.2d 931 (5th Cir.1976). Also see *State v. Hayes*, 108 Idaho 556, 700 P.2d 959 (App.1985); *In re Newbern*, 175 Cal.App.2d 862, 1 Cal.Reptr. 80, 83 (1959); Annot., 95 *A.L.R.3rd* 710 (1979); 78 *A.L.R.2d* 905 (1961).

We are unable to find in either our statutory law or in our State constitution, or in the due process clause of the Federal Constitution, a requirement that a person who has been arrested for driving while intoxicated has the absolute right to request and be administered at State expense any kind of test that might reflect whether he is intoxicated.

Furthermore, given the facts and circumstances on this point, we cannot state that Wigley should have done more than what he did to see that the appellant's belated agreement to take the test was fulfilled. Cf. *State v. Hayes*, supra, in which the court of appeals of Idaho found that the officer in that cause had not acted arbitrarily in refusing the defendant's belated request to take the "Mobat" test, and held that such refusal did not violate her right to due process of law.

We hold that Wigley's failure to do more than he did did not constitute an arbitrary or unreasonable act on his part or that such violated the appellant's due process rights guaranteed her under either the Federal or State Constitution.

Appellant's contention is overruled.

The judgments of the court of appeals and the trial court are reversed and the cause is remanded to the trial court.

ONION, P.J., and CAMPBELL, J., concur in the result.

W.C. DAVIS, J., dissents.