Reversed and Remanded and Majority and Concurring Opinions filed August
1, 2006








Reversed
and Remanded and Majority and Concurring Opinions filed August 1, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-03-00585-CR

_______________

 

JOHN B. DAVIS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                               
                                

On Appeal from the County Criminal
Court at Law No. 6

Harris County, Texas

Trial Court Cause No. 1117461

                                                                                                             
                                  

 

M A J O R I T Y   O P I N I O N

 

John B. Davis appeals a conviction
for driving while intoxicated[1] (ADWI@) on the grounds that the prosecutor
and trial court: (1) misstated the law concerning the State=s burden of proof during voir dire
and closing argument; and (2) asked improper commitment questions of the jury
venire panel based on that misstatement of the law during voir dire.  We
reverse and remand.








                                                                     Voir
Dire








Appellant=s first point of error contends that
the trial court erred in overruling appellant=s objections to the State=s misstatements of the law regarding
proof of intoxication during voir dire.  The prosecutor told the jury during
voir dire that they would be required to find that appellant was intoxicated if
they believed beyond a reasonable doubt that: (1) the intoxilyzer
breath-testing device was functioning properly at the time of the test; (2) the
test was properly administered; and (3) appellant=s test result was 0.08 or above (the Athree conditions@).[2] 
Appellant contends that this was a misstatement of the law because even if the
jury believed the three conditions beyond a reasonable doubt, it was still free
to disbelieve the accuracy of the result, and it must still have been convinced
beyond a reasonable doubt that the defendant had the requisite blood-alcohol
level at the time he was driving.  Therefore, appellant contends, proof of the
three conditions did not automatically require the jury to convict him of DWI.








 In a DWI prosecution, if the State
relies upon the .08  definition of intoxication,[3]
then proof of the intoxication element will normally consist of a chemical test
showing the alcohol concentration in a defendant=s body near the time of the offense.  Bagheri
v. State, 119 S.W.3d 755, 761 (Tex. Crim. App. 2003).  However, a
conviction will not necessarily follow from the offer of such a test.  Id. 
Instead, the trier of fact must still be convinced beyond a reasonable doubt
that: (1) the chemical test provides trustworthy evidence of alcohol
concentration in the defendant's breath, blood, or urine;[4]
and (2) an inference can be made from the results of the chemical test that the
defendant had a .08  alcohol concentration in his body at the time of the
offense.  Id. 

Contrary to portions of appellant=s argument, the prosecutor did not
say during voir dire that, if the three conditions were proved, the jury must convict
appellant or even find that he was intoxicated while driving.  Rather,
the prosecutor stated only that if the jury believed beyond a reasonable doubt
that the three conditions were met, then it must find that appellant was
intoxicated (i.e., at the time he was tested).  However, appellant correctly
objected at trial and reiterates on appeal that despite proof of the three
conditions, he was still entitled to challenge whether the device provided a
valid testing method.  In other words, even if the jury believed  beyond a
reasonable doubt that the three conditions were met, it does not necessarily
follow that the test conducted by the device provides Atrustworthy evidence of alcohol
concentration in a defendant=s breath, blood or urine.@  See id.  Therefore,
appellant was entitled to challenge, and the jury to disbelieve, the
reliability of the methodology used by the machine (even if it was functioning
and being operated properly);  and it was possible for the jury to find no
intoxication even if it believed the three conditions were met beyond a
reasonable doubt.  Thus, the prosecutor=s statements to the contrary were an
incorrect statement of law to that extent.








The State contends that this complaint
was not preserved for our review because appellant failed to lodge an objection
in at least two of the instances in which such statements were made by the
State, and had not requested a running objection to that assertion.  See
Tex. R. App. P. 33.1(a)(1)(A); Lane
v. State, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004).  However, in
determining whether a complaint has been preserved for appeal, the ultimate
consideration is whether the party has clearly made the trial court aware of
what he wants and why he is entitled to it at a time when the trial court is in
a position to do something about it.  Keeter v. State, 175 S.W.3d 756,
760 (Tex. Crim. App. 2005).  Thus, redundant objections to repetitions of the
same matter for the same reason are not necessary if the circumstances indicate
that they would have been futile.  See Graham v. State, 710 S.W.2d 588,
591 (Tex. Crim. App. 1986).

In this case, appellant clearly and
specifically objected to the prosecutor=s statements and was unequivocally
overruled three times before the two instances in which he did not object. 
Because no useful purpose could have been served by objecting further, a
conclusion that the complaint was not preserved would operate only to elevate form
over substance.  Accordingly, we sustain appellant=s first point of error.

                                                             Closing
Argument

As an alternative ground for our
disposition of this appeal, we will also address appellant=s fourth point of error,[5]
which contends that the trial court erred in overruling appellant=s objections to the State=s closing argument, similarly
misstating the law:








THE STATE: And you heard from Rick Viser, the
technical supervisor . . . .  And he told you that on May 24th,
2002, the instrument in this case was functioning properly.  His testimony was
uncontroverted.  There was not one witness that came into this courtroom and
testified that the intoxilyzer instrument in this case was not functioning properly
on May 24th, 2002. [T]he elements that you are here to decide
today.  That is it, it is really simple.  So why have we been sitting here for
three days?  What have we been listening to?  We have been listening to Mr.
Davis= defense that he has a constitutional right to put
before you.  He is asking you to consider, through the testimony of his
expert witness, Mr. Booker, Dr. Booker, the voice for the defense.  He is
asking you to decide on an issue that you are not here to decide about.  It has
already been decided for you.

DEFENSE COUNSEL: Your Honor, that is not the law.

THE COURT: The jury will receive the law from the
Court[[6]] and be
governed thereby.  Move on.

THE STATE: . . . you are not here to decide whether or
not the State of Texas, the Texas legislature and the Texas Department of
Public Safety made a correct decision in choosing the Intoxilyzer 5000
instrument, Serial No. 68-000-410.  You are not here to decide that issue.  The
defense expert wants you to believe that there are all these problems with the
intoxilyzer instrument.  And there are all these issues and all these things
and all this technical jargon that makes this instrument unreliable.  But,
ladies and gentlemen, you have received the law.  The Texas legislature B

DEFENSE COUNSEL: I=m
going to object again.  She is doing exactly what I said she was going to do.

THE COURT: Hold on.  Your objection is overruled,
Counsel.

THE STATE: You have received the law.

DEFENSE COUNSEL: For the record, I want to make clear
what my objection is, she is misstating the law for the record.

THE COURT: Move on.

THE STATE: The Texas legislature has already
decided in promulgating the DWI laws of this state that they are going to rely
on the Intoxilyzer 5000 to measure the breath alcohol concentration of DWI
suspects.  You may not like it.  You may not think that it is good.

DEFENSE COUNSEL: Your Honor, I object.  At least give
me a running objection on this issue.

THE COURT: You will have a running objection.

(Emphasis added).








An argument misstating the law is
improper.  Cf. State v. Renteria, 977 S.W.2d 606, 608 (Tex. Crim.
App. 1998).  However, in order to preserve a complaint for appellate review, it
is generally required that the complaining party either: (1) pursue the
objection to an adverse ruling, made expressly or implicitly; or (2) object to
the trial court=s refusal to rule.  Tex.
R. App. P.  33.1(a)(2); Haley v. State, 173 S.W.3d 510, 517-18
(Tex. Crim. App. 2005).  An implied ruling can be found only where the trial
court=s actions or other statements in the
record unquestionably indicate a ruling.  Montanez v. State, __ S.W.3d
__, __ (Tex. Crim. App. 2006).  Thus, for example, a trial court=s statement similar to the one above,
given in response to appellant=s first objection, has been held a failure to obtain an
adverse ruling.[7]  Conversely,
an implied ruling has been inferred from a judge=s failure to contradict counsel
combined with other statements made by the trial court.  See Sauceda v.
State, 129 S.W.3d 116, 124 n.6 (Tex. Crim. App. 2004).








In this case, the record contains
numerous objections by appellant to the prosecutor=s misstatements of the law on this
aspect.  In each instance where the trial court gave an express ruling, it
overruled the objection.  In addition, the trial court=s own misstatement of the law in this
regard during voir dire[8] further
signified its disagreement with appellant=s position.  Because this record
leaves no uncertainty that the trial court was averse to appellant=s objection, we conclude that it
implicitly overruled that objection.  Therefore, we sustain appellant=s fourth point of error.

                                                                         Harm

In determining whether the error in
this case requires reversal of the judgment, the issue is whether, viewing the
record as a whole, the error affected substantial rights.[9] 
See Tex. R. App. P. 44.2(b);
Anderson v. State, 182 S.W.3d 914, 918-19 (Tex. Crim. App. 2006). 
Factors relevant to this determination include the severity of the error,
measures taken to cure it, and the certainty of conviction without the error.  Anderson,
182 S.W.3d at 918-19.








In this case, the severity of the
error was considerable in that the jury was allowed to convict appellant based
on an incorrect understanding of the law applicable to a fundamental aspect of
the State=s burden of proof.  There were not only no measures taken to cure this
error, but the trial court compounded it by overruling appellant=s attempts to correct the
misstatement and by affirmatively making the same misstatement itself. 
Similarly, although the evidence may well have been sufficient to convict
appellant without the error, it is not possible to assess how the jury might
have weighed the evidence, including that of appellant=s expert on the reliability of the
intoxilyzer,[10] in the context of
the correct law.[11] 
Because the error was therefore harmful, we reverse the judgment of the trial
court and remand the case for further proceedings.

 

 

/s/      Richard H. Edelman

Justice

 

Judgment rendered
and Majority and Concurring Opinions filed August 1, 2006.

Panel consists of
Justices Edelman, Seymore, and Guzman.(Seymore, J., concurring)

Do not publish C Tex. R. App. P. 47.2(b).









[1]           A jury found appellant guilty, and the
trial court assessed punishment at 180 days confinement, probated for one year.





[2]           The relevant portions of
the record are reproduced below:

THE STATE: . . .  The Intoxilyzer 5,000 instrument
and the results of Intoxilyzer 5,000 tests B if I prove to you beyond a reasonable doubt that the
instrument itself was functioning properly and that the breath test was
administered properly B if I
prove those two things to you beyond a reasonable doubt in Texas a breath
alcohol concentration of at least .08 or higher is per se intoxicated, you as a
juror have no discretion if you believe beyond a reasonable doubt that the test
was administered properly and that the instrument was functioning properly.

DEFENSE COUNSEL: Objection, Your Honor, that=s not the law.

THE COURT: Overruled.

                                                                    *       
*        *

THE STATE: . . .  Does anyone on the panel just
think, A. . . even if I believe beyond a reasonable doubt that
the instrument was functioning properly and that the test  was administered
properly B I just can=t B I just can=t follow that law.  I cannot find the defendant guilty based on a
breath alcohol test.@  Does
anyone on the  first row feel that way?

VENIRE PERSON: I just want to find out what is the
percentage of success on those.  I mean B

THE STATE: And that is B and that is a concern.  That is not a concern that
you can take into account as far as this element is concerned.  We are talking
about proof beyond a reasonable doubt that the test B

DEFENSE COUNSEL: Objection, Your Honor.  Again, that=s not the law.  We can show that the machine B has problem with the machine, Judge.  That B there=s case law that
says that I can do that.  She=s acting like
that=s not the law and that is not the case.

THE COURT: State your purpose.

DEFENSE COUNSEL: The purpose, Judge, is that I have a
right to get into the issue of whether or not the breathalyzer machine is in
fact a valid machine, whether or not it works properly and just because she
claims it=s going to work properly and she can show it can work
properly is not sufficient under the law to find my client guilty.

THE COURT: The jury will receive the law from the
court.  I overrule your objection.  You will, however, get to explain your side
when you talk.  You will receive the law from the Court and instructed thereby. 
You may proceed.

THE STATE: And, ladies and gentlemen, that is
absolutely the law in the state of Texas as to the element of intoxication.  If
you believe beyond a reasonable doubt that the machine was functioning properly
and that the test was administered properly and you believe beyond a reasonable
doubt that the defendant had a B

DEFENSE COUNSEL: Again, objection.  Misstating the
law.  That is not a true statement of the law.

THE COURT: Overruled.

THE STATE: And if you believe beyond a reasonable
doubt that the defendant had a breath alcohol concentration of .08 or higher in
Texas, that is per se intoxication and you must find that the defendant was
intoxicated under the law as to the element of intoxication. 

[No objection.]

*          *          *

THE STATE: . . .  What I need to know from everyone
is: Who here on the panel cannot follow this law?

*          *          *

THE STATE: Obviously, if you believe beyond a
reasonable doubt that the instrument was functioning properly and that the test
was administered properly and you believe beyond a reasonable doubt that the
defendant had a breath alcohol concentration of .08 or higher, obviously, that
is the law as far as the element of intoxication is concerned . . . . 

[No objection.] (Emphasis added)





[3]           For this purpose, Aintoxicated@ is
defined to mean having an alcohol concentration of 0.08 or more, measured by
the ratio of the number of grams of alcohol per 210 liters of breath.  Tex. Penal Code Ann. ' 49.01(1), (2)(B) (Vernon 2003).





[4]           Although the State asserted in closing
argument that the Legislature Aalready decided
in promulgating the DWI laws of this state that they are going to rely on the
Intoxilyzer 5000 to measure the breath alcohol concentration of DWI suspects,@ section 724.064 merely states that evidence of
alcohol concentration as shown by analysis of a specimen of the person=s blood, breath, or urine or any other bodily
substance taken at the request or order of a peace officer is admissible (i.e.,
not conclusive or even presumed valid).  Tex.
Transp. Code Ann. ' 724.064 (Vernon 1999) (emphasis added).





[5]           Because appellant=s second, third, and fifth point of errors were not
preserved for our review with proper objections, we would not address them on
the merits in any event, but do consider the matters complained of as part of
the entire record for purposes of assessing harm pertaining to appellant=s first and fourth points of error.





[6]           The court=s charge contained no instruction regarding an intoxilyzer device.





[7]           Flores v. State, 871 S.W.2d 714, 723
(Tex. Crim. App. 1993)(holding that the appellant failed to pursue his
objection until an adverse ruling was received where the trial court did not
respond to the objection, but instead stated to the jury, Awhat the attorneys say is not evidence . . . .  You=ll be guided by the instructions of the Court only.@).





[8]           These statements included
the following:

THE COURT: B
the person, Harris County all the other ones I gave you B State proves hypothetically beyond a reasonable doubt
that the instrument is working correctly and that the person administering the
test is properly qualified and that the test was administered correctly and
hypothetically you believe all that beyond a reasonable doubt and
hypothetically the result was at least .08 or higher whether or not you like
the law or not, if those were the facts, could you find a person guilty based
on that?  Yes or no?

*    *          *

THE COURT: . . . .  If you=re at that minimum end of 0.08,
everything=s proven beyond a reasonable doubt,
everything is as I=ve just stated it and you still
want more, you couldn=t use that in and of itself to find
someone guilty even though that is the law?  How many of you feel and think
that way and you can=t follow that?  Raise your hand.  

*           *           *

THE COURT: Okay.  You may not like
it.  You may not feel good about it, but I need to know if you can follow the
law . . . .  Assuming everything has been proven beyond a reasonable doubt,
identity, Harris County, date, operating motor vehicle and the only other thing
that you had hypothetically was an Intoxilyzer result of .08 or more and you
believe beyond a reasonable doubt that the machine was working properly, that
the person administering the test was administering the test properly, you
believe all that beyond a reasonable doubt and hypothetically the result was
.08 or more, can you follow the law and find a person guilty in that instance? 
Yes or no?

*           *           *

THE COURT: B hypothetically in the example that
I gave you.  I don=t know what they got in this case. 
Okay.  They=ve alleged an Intoxilyzer.  I don=t even know if they got one.  I=m trying to qualify you to sit on
this jury one way or the other.  If it is as I=ve just stated, could you follow the law under those
limited facts and find a person guilty?





[9]           Because we conclude that the error was
harmful under the higher threshold applicable to non-constitutional error, we
need not address whether the error was constitutional.





[10]         Appellant contends that overruling his
objections incorrectly indicated to the jury that: (1) the Legislature had
already decided for the jury that the intoxilyzer was reliable and that its
results were conclusive, thereby divesting the jury of its duty to
independently determine whether it believed the results proved an alcohol
concentration above the legal limit; (2) the jury only had to be concerned with
the uncontroverted proof that the intoxilyzer was operating properly; and (3)
defense expert Booker=s testimony was meaningless because the issues it
raised had already been decided for the jury.  At trial, Booker testified that: (1) Texas uses the
Intoxilyzer 5000, which  is a three filter machine, to measure the blood
alcohol level; (2) there are many problems with the Intoxilyzer 5000 and that
it is not a good system because it is limited and flawed; (3) the five filter
machine is superior and is for that reason used in Europe; (4) Texas did not
adopt the federal standard requiring a systematic check in its breath testing
program to ensure the acetone detection feature works on its instruments; (5)
he would like Texas to adopt some systems to make the breath testing procedure
more accurate; and (6) there is a newer Intoxilyzer 5000 instrument, the 68-EN,
which is used in other states.





[11]         Cf. Penry v. State, 178 S.W.3d 782,
788 (Tex. Crim. App. 2005) (ABecause we have
already concluded that there is a reasonable likelihood that the jury believed
that it was not permitted to consider evidence of mental impairment outside of
determining whether the appellant is mentally retarded, we cannot conclude that
the error is harmless.@).