

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00210-CR

———————————————————

DAVID M. ALFEREZ, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1764505

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

A jury convicted Appellant David M. Alferez of one count of arson of a habitation and one count of aggravated assault with a deadly weapon, *see* Tex. Penal Code Ann. §§ 22.02(a)(2), 28.02(d)(2), and assessed his punishment at 35 years' imprisonment on the arson count and 25 years' imprisonment on the aggravated-assault count.[1] In one issue on appeal, Alferez argues that the trial court erred and violated his rights under the United States and Texas Constitutions and Texas Code of Criminal Procedure Article 1.25 by denying his motion for mistrial and second motion for continuance during the trial on punishment. We affirm.

## I. Facts of the Offenses

During the trial on the merits, Dean Abraham testified that one night in 2022, he "was alerted to somebody taking a baseball bat to [his (Abraham's)] door." He testified that he "opened the door and saw a gentleman standing there with a baseball bat." Abraham recognized the man as one of his neighbors. In court, he identified Alferez as the man. Video footage captured by Abraham's home-security cameras was admitted in evidence and played for the jury. On one of the videos, a man with a baseball bat can be seen walking around outside Abraham's trailer shortly after

---

[1]Alferez's punishment on the aggravated-assault count was enhanced under Texas Penal Code Section 12.42(b). *See* Tex. Penal Code Ann. § 12.42(b) (enhancing punishment for a second-degree felony to that for a first-degree felony when the defendant has previously been convicted of a felony other than a state-jail felony); *see also id.* § 12.32 (first-degree-felony punishment).

midnight. Minutes later, the video showed the same man retrieving a can of what Abraham identified as paint thinner, pouring it on Abraham's wooden porch, and lighting it on fire. Abraham also testified that Alferez had threatened him with the baseball bat and broken his camera. After both parties had finished examining Abraham, the trial court excused him but told him that he was "subject to being recalled as a witness in this case."

## II. Abraham's Disappearance and the Punishment Trial

In between the merits trial and the punishment trial, Alferez let the trial court know that he wanted to recall Abraham as a witness but had been unable to contact him. At Alferez's request and over the State's objection, the trial court issued a writ of attachment for the missing witness. The following day, Abraham did not appear in court. Alferez made an offer of proof detailing what he anticipated Abraham's testimony would be, and the punishment trial proceeded. The State introduced certified copies of court records showing Alferez's prior convictions and sentences and called just one witness—a sheriff's deputy who had taken Alferez's inked prints the day before—to establish that Alferez was the same person named in the court records.

After the State rested, Alferez called the records custodian for My Health My Resources (MHMR) of Tarrant County, who authenticated medical records showing that Alferez had a history of mental illness. Alferez then recalled his cousin (who had testified in his defense at the merits trial), who testified as mitigation that Alferez's

3

mother had physically abused him as a child, that his mother had kicked Alferez out of the house when he was about 13 years old, and that he was on medication for his mental condition. The trial court then called a lunch recess, and before the jury was brought back in, Alferez told the trial court that both his private investigator and a deputy constable had tried unsuccessfully to serve Abraham with the writ of attachment. Alferez moved for a continuance until "noon Friday" (the next day), which the trial court granted.

The punishment trial resumed at 1:30 p.m. that Friday, at which time Alferez informed the trial court that his investigator had gone back to the mobile-home park earlier that day but had still not found Abraham. Alferez also told the trial court that his investigator had talked to the mobile-home-park leasing manager, who had not seen Abraham either. Alferez then asked the trial court to grant a mistrial and, in the alternative, to issue a warrant for Abraham and requested a continuance "for that warrant to be executed." The trial court denied the motion for mistrial and the continuance motion. Alferez then rested and closed without putting on any more evidence or calling any other witnesses.

### III. Discussion

In his only issue on appeal, Alferez argues that the trial court violated his confrontation rights under the Sixth Amendment of the United States Constitution; Article I, Section 10 of the Texas Constitution; and Texas Code of Criminal Procedure 1.25 when it denied his motions for mistrial and for continuance. The State

4

argues that Alferez has not preserved this issue for our review and, alternatively, that the trial court did not err by denying Alferez's second motion for continuance. We will separately address Alferez's complaints about his denied mistrial and his denied continuance. But we first set forth the applicable law on error preservation.

## A. Preservation of Error

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020). Most complaints, "whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004); *see Henderson v. United States*, 568 U.S. 266, 271, 133 S. Ct. 1121, 1126 (2013); *Henson v. State*, 407 S.W.3d 764, 767 (Tex. Crim. App. 2013).

Error is also forfeited when the complaint made on appeal does not comport with the complaint made in the trial court. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464

5

(Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). Error preservation is a systemic requirement, and we have a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Dixon*, 595 S.W.3d at 223.

**B. Mistrial**

The State contends that because the trial court did not deny Alferez's request for a writ of attachment for Abraham, his mistrial complaint is not preserved for our review. It relies on this language from the Court of Criminal Appeals' opinion in *Sturgeon v. State*:

> This Court has established a three-step procedure for preserving error when a subpoenaed witness does not appear. *Erwin v. State,* 729 S.W.2d 709, 714 (Tex.Crim.App.1987). First, the party must request a writ of attachment, which must be denied by the trial court. *Id.* Second, the party must show what the witness would have testified to. *Id.* Third, the testimony that the witness would have given must be relevant and material. *Id.*

106 S.W.3d 81, 85 (Tex. Crim. App. 2003). We reject the State's preservation argument. As pertinent here, Alferez had already asked for a writ of attachment, which the trial court granted. Thus, he received a ruling on that part of his complaint. We do not see how making him ask again for the same relief would be anything other than futile. *See, e.g., Graham v. State*, 710 S.W.2d 588, 591 (Tex. Crim. App. 1986). After the writ-of-attachment relief proved to be ineffective, Alferez asked the trial court for a mistrial "due to compulsory process issues that [Abraham was] just flagrantly

6

disregarding th[e trial c]ourt and this process." The trial court denied this request. Alferez thus obtained an adverse trial-court ruling about which he complains on appeal. Accordingly, we will review the merits of his mistrial complaint.

### 1. Standard of Review and Applicable Law

We review the denial of a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A trial court does not abuse its discretion if its decision is at least within the zone of reasonable disagreement. *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. App.—Fort Worth 2005), *aff'd*, 189 S.W.3d 272 (Tex. Crim. App. 2006). A mistrial is a device used to halt trial proceedings when error is so prejudicial that expending further time and expense would be wasteful and futile. *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009). A trial court may properly exercise its discretion to declare a mistrial if an impartial verdict cannot be reached. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). "The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case." *Id.*

### 2. Analysis

We faced a similar situation in *Walker v. State*, No. 2-07-072-CR, 2008 WL 425996 (Tex. App.—Fort Worth Feb. 14, 2008, pet. ref'd) (per curiam) (mem. op., not designated for publication). There, a defense witness did not appear at trial even after a writ of attachment had been issued for him and he had been served with a subpoena. *Id.* at *1. After continuing the trial for a similar length of time to that

7

of the first continuance Alferez received in this case,[2] the trial court resumed the proceedings before Walker was able to procure the witness's testimony. *Id.* Walker orally moved for a continuance and a mistrial, the trial court denied both motions, and Walker's defense rested and closed shortly thereafter. *Id.* After the State and Walker had rested and closed in the punishment phase, the police arrested the witness. *Id.* at *2. The trial court questioned the witness and found him in contempt of court, then allowed Walker to question him. *Id.* Walker reurged his motion for a mistrial, which the trial court again denied. *Id.*

On appeal, Walker argued that the trial court erred by denying his mistrial motions because the witness's prospective testimony, which would ostensibly have caused the jury to doubt the complainant's identification of Walker, was "material and vital to a fair trial." *Id.* at *4. We disagreed, largely because the witness's proffered testimony would not have contradicted or explained other, highly inculpatory evidence that had been admitted against Walker at his trial. *Id.* at *4–5. Concluding

---

[2]Walker had informed the trial court just before the State rested in the merits phase of trial that he could not find the witness whom he had planned on calling to testify. *Walker*, 2008 WL 425996, at *1. After a lunch recess concluded, the trial court adjourned the proceeding until the next morning to give Walker time to track the witness down. *Id.* By mid-morning, the trial court stated that it was still waiting for the witness to arrive at court, that a writ of attachment had been issued, that the witness had been served with a subpoena, that an investigator and a sheriff's officer were at the witness's residence attempting to locate him, and that the trial court had left a message on the witness's cellphone instructing the witness to come to court or face being held in contempt of court. *Id.* The trial court stated that it would wait until 1:00 p.m. for the witness to show up, at which point the trial would resume. *Id.* When the witness had still not appeared at 1:00 p.m., the trial resumed. *Id.*

that the witness's testimony "was not 'vital' to Walker receiving a fair trial or necessary for the jury to have reached an impartial verdict," we held that the trial court did not abuse its discretion by denying Walker's motions for a mistrial. *Id.* at *5.

Like in *Walker*, we have the benefit of knowing the testimony that the missing witness would have given had he shown up to testify in Alferez's case, thanks to Alferez's offer of proof. Alferez repeatedly stresses in his brief that the trial court had made a finding that Abraham's testimony, as anticipated by Alferez, was "material" and "[p]otentially mitigating." But Alferez fails to mention that, during his offer of proof (made the day after the trial court made its finding), the trial court pointed out that the jury had already heard almost all the testimony that Alferez anticipated Abraham would give if he were recalled.[3] In fact, it appears that the only additional testimony that Alferez would have elicited from Abraham at the punishment trial was that (1) they "were close friends," but (2) Abraham "had a grudge" against Alferez because "he thought that . . . Alferez . . . was having an affair with his wife."

---

[3]As Alferez was making his offer of proof, the trial court interrupted him and stated, "The jury has already heard this." Alferez responded, "Not completely," and went on to explain that the defense had just found out "a little before noon" the previous day that Abraham would testify that "prison doesn't rehab people," that "he didn't want to be [in court]," and that "he [wa]s forgiving [Alferez] for everything that happened." The trial court then told Alferez, "All of that information you just summarized he testified about during [the merits trial]: forgiving, counseling, no prison. He said all of that in [the merits trial]." The record substantially supports the trial court's recollection of Abraham's testimony.

We fail to see how this additional testimony was "mitigating" or "favorable to the defense," as Alferez argues. If anything, the jury's learning that the victim of Alferez's arson and aggravated assault was his close friend and that Alferez might have been having an affair with his wife could well have prejudiced the jury *against* Alferez. Although Alferez argued to the trial court that this additional testimony would have been "contrary to [Abraham's earlier] testimony," the general rule is that a party is not entitled to impeach a witness on a collateral matter, *see Ramirez v. State*, 802 S.W.2d 674, 675 (Tex. Crim. App. 1990), and Alferez has not shown that any exception to that rule applies here. *See Pierson v. State*, 426 S.W.3d 763, 772 (Tex. Crim. App. 2014) ("Although exceptions to the general rule exist, and sometimes the rules of evidence must give way to a defendant's Sixth Amendment right to confront his or her accuser, Appellant has not shown that any such exception applies in this case. Rather, Appellant made an inadequate showing . . . ." (cleaned up)). Alferez has thus not shown that he had a right to elicit this additional testimony from Abraham.

But even if this additional testimony was material, admissible, and mitigating, we still cannot say that the trial court abused its discretion by denying Alvarez's request for a mistrial. Although Alferez had the opportunity to cross-examine Abraham when he testified earlier in the trial, Alferez chose not to ask him about their friendship or the alleged affair. Considering this case's particular facts, the trial court could reasonably have determined that the jury could have reached an impartial

10

verdict on punishment without hearing this additional testimony. Alferez has not demonstrated how he was denied due process by the inability to put on testimony that he could have—but chose not to—put on when the witness was on the stand. *See Freeman v. State*, 736 S.W.2d 154, 157 (Tex. App.—Houston [14th Dist.] 1987, no pet.) (rejecting appellant's argument that the trial court had erred in overruling his mistrial motion where "many of the[] topics" that appellant contended he would have questioned a missing witness about "were covered during the initial cross-examination of the witness," appellant had the opportunity to question the witness about the other topics at that time, and appellant failed to "demonstrate why these unasked questions denied him a fair trial"). We hold that the trial court did not abuse its discretion when it denied Alferez his requested mistrial.

## C. Alferez's Second Motion for Continuance

Regarding the trial court's denial of Alferez's second motion for continuance at the punishment trial, the State argues that Alferez has also forfeited this complaint for our review. Here, we agree with the State. "All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." Tex. Code Crim. Proc. Ann. art. 29.08. Additionally, Article 29.03 provides, "A criminal action may be continued on the *written* motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion." *Id.* art. 29.03 (emphasis added). If a party makes an unsworn, oral motion for a continuance and the trial court denies it, then the party forfeits the right to

complain about the trial court's ruling on appeal. *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009).

Here, Alferez's second motion for continuance—the one the trial court denied—was neither written nor sworn. Alferez has thus forfeited his right to complain about the court's denial of it.[4] *See id.* Because any error in the trial court's denial of Alferez's unsworn, oral motion for a continuance is not preserved for our review, we overrule Alferez's appellate issue.

## IV. Conclusion

Having overruled Alferez's only appellate issue, we affirm the trial court's judgment.

---

[4]In *Walker*, we reviewed the merits of the trial court's denying Walker's mid-trial oral continuance motion. 2008 WL 425996, at *2–4. We declined to "revisit the issue of whether an oral motion for continuance during trial fails to preserve error" and held that the trial court did not abuse its discretion by denying Walker's oral motion for continuance. *Id.* at *3–4. In *Anderson*, which was issued after *Walker*, the Court of Criminal Appeals made clear that no due-process exception to the error-preservation requirements for continuance motions exists. 301 S.W.3d at 279–81. As the Court explained, "A defendant's constitutional right to a meaningful opportunity to present a complete defense is rooted in the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process and Confrontation Clauses." *Id.* at 280. Like confrontation and compulsory-process rights, the right to present a defense is subject to forfeiture. *Id.* at 280–81.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 14, 2025