**Martin CARDENAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–89–00354–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 15, 1990.

Rehearing Denied April 5, 1990.

Allen C. Isbell, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Allen Curry & Vic Wisner, Harris County Asst. Dist. Attys., for appellee.

Before WARREN, COHEN and DUNN, JJ.

OPINION

COHEN, Justice.

A jury found appellant guilty of murder and assessed punishment at 35 years imprisonment.

In point of error three, appellant contends the trial court wrongly admitted in evidence the hearsay statement of the victim's four-year-old son. The son, who did not testify, was the only eyewitness other than Imelda Baron, the victim's wife, whose credibility was severely attacked. The son's hearsay directly implicated appellant. The jury, which deliberated more than 13 hours over three days at the guilt stage, asked the court to reread the son's hearsay statement during its deliberations,

and the court returned the jury to the courtroom and did so.

During the State's direct examination, Imelda Baron testified as follows:

Q. Did Houston police officers come to your home?

A. Yes.

Q. Did they ask you who shot your husband?

A. Yes.

Q. What did you say to them at first?

A. I said that it had been some black men, I said this because I was a little bit afraid then.

Q. Did you know that you were lying to the officers and what you were saying to them was not true?

A. Yes.

Q. Why did you lie?

A. Because I was afraid.

Q. Was your oldest son also speaking to the officers at first?

A. Yes.

Q. Was he telling them the same story as you about the robbers or was he telling them the truth?

Mr. Sandoval: Objection, calling for hearsay.

The Court: Overruled.

The Interpreter: *Was he telling them the same story as—*

Q. By Mr. Wisner—*as you were about the robbers or was he telling the officers about the truth about what happened?*

A. My son?

Q. Yes.

A. My son was saying as I said? *No, he was telling the truth.*

During the State's direct examination of Officer Donahue, he testified as follows:

Q. Did you ask both Imelda Baron and her son as to who had killed their husband and their father?

A. Yes.

Q. Without going into what they said, did they each give a story?

A. Yes.

Q. *Were the stories the same?*

A. *No.*

On re-direct, Officer Donahue testified as follows:

Q. What was the boy saying about who shot his father?

Mr. Shelton: Object, hearsay.

Mr. Wisner: Mr. Shelton opened the door asking whether or not the case was closed.

The Court: I believe he was trying to but I'm going to sustain his objection.

Q. In either case was the boy telling you a story other than two robbers shot his father?

Mr. Shelton: Asking for hearsay response.

The Court: It's repetitious.

During the State's direct examination of Officer Avila, he testified as follows:

Q. What type of things did you do to try to get Imelda to tell you a story that was true?

A. By confronting her with the facts that I had learned.

Q. What things did you do or say to her to try to get her to tell you the story that you thought was true?

A. I told her, you know, the facts that I had learned and who I had learned that information from as far as who had committed the shooting.

Q. *But what words specifically*—at least the English translation—*did you say to her to try to get her to tell you the truth?*

A. I'm not too sure what you're—

Q. What you tell her isn't hearsay. What she tells you is hearsay. You can tell us what you told her to try to get her to tell you a version of what happened—you thought was true.

Mr. Shelton: Object to that. He's trying to get hearsay in the back door what he can't do legitimately.

The Court: Overruled.

A. *I told her that her son had said that Martin had done the shooting.*

■ Appellant argues that the son's statement was "backdoor hearsay" encompassed by TEX.R.CRIM.EVID. 801(a). *See Schaffer v. State*, 777 S.W.2d 111, 113 (Tex.Crim.App.1989). We agree.

■ The State first makes a very brief argument, without authority or record citation, that the child's statement was "clearly" admissible under TEX.R.CRIM.EVID. 803(1), the "present sense impression" exception to the hearsay rule. The term "present sense impression" is defined as "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." No evidence shows the son's statement was made while perceiving the event or immediately thereafter. Evidence showed only that the son made the statement the same day as the shooting, in response to police interrogation, which was conducted by an interpreter because he did not speak English. No evidence shows when the questioning took place or that it took place "immediately" after the shooting.

■ The State's primary contention, also made without authority or record citation, is that the statement was not offered for its truth, but to show that it was made, "that is, by offering the statement, the State was not trying to prove that the appellant killed the complainant. The State was clearly trying to prove that the son ... made the statement." This is the State's entire argument on this contention. The State made no such contention in the trial court, either when offering the evidence or when mentioning it, over objection, in its opening statement.

Nothing suggests to us that the son's statement was not offered for its truth or that the jury used it for any reason except its truth. The jury's request to hear the evidence repeated during its deliberations strongly suggests the jury considered it as important evidence of the truth. Because the State's purpose at trial was to prove that appellant killed the complainant, we are not convinced that it offered the statement for some other purpose. Indeed, the *Schaffer* court rejected this very argument:

Almost always it will be relevant for a testifying officer to relate how she happened upon the scene of a crime or accident ... The police officer, however should not be permitted to relate histori-

cal aspects of the case, replete with hearsay statements in the form of complaints and reports on grounds that she was entitled to tell the jury the information upon which she acted.

777 S.W.2d at 114–15.

The court concluded that there was "no doubt" that the State's "sole intent" was to convey the statement to the jury for the truth that it implied. *Schaffer*, 777 S.W.2d at 114.

Finally, the State argues that "only a very short time after the alleged hearsay," Officer Avila testified without objection as follows:

Q. Officer, why didn't you just accept her (Imelda Baron's) version of the story and go on from there?

A. Because ... when I confronted her with the fact that her son had told me about (appellant) doing the shooting ... she went ahead and started telling me what actually happened.

The State cites *Livingston v. State*, 739 S.W.2d 311, 333 (Tex.Crim.App.1987), and *Anderson v. State*, 717 S.W.2d 622, 626–27 (Tex.Crim.App.1986), for the proposition that appellant waived the error by not objecting to Officer Avila's immediate repetition of the same hearsay. The State contends that if the same hearsay was admitted elsewhere in the record without objection, the trial court's error in overruling the objection was harmless.

■ We reject this argument for two reasons. First, the trial court had overruled appellant's valid hearsay objection *immediately* before Officer Avila repeated it again. Texas courts have held that in some circumstances, a defendant is not required to constantly repeat an objection. One such circumstance is when the objection would be futile because the court has just overruled a valid objection to the same testimony. *Graham v. State*, 710 S.W.2d 588, 591 (Tex.Crim.App.1986); *D.L.N. v. State*, 590 S.W.2d 820, 823 (Tex.Civ.App.—Dallas 1979, no writ). This case resembles the facts in *Graham* and in *D.L.N.*, and we consider those cases to be controlling. We hold the error was preserved for review.

*Livingston* and *Anderson* are both distinguishable. In *Livingston,* the court held the hearsay admissible because the issue of probable cause to arrest was before the jury, pursuant to TEX.CODE CRIM. PROC.ANN. art. 38.23 (Vernon 1974). Therefore, the waiver holding in *Livingston* was unnecessary because there was no error. In addition, the same witness did not repeat the objectionable hearsay immediately after the objection was overruled. A different witness repeated the testimony at some other time in the trial. 739 S.W.2d at 332–33. In *Anderson,* the repetition of the hearsay did not immediately follow the trial court's order overruling the objection, but came in through two other witnesses, including the defendant himself. 717 S.W.2d at 626–27.

■ Finally, nothing shows the error was harmless. The opposite is the case. Imelda Baron, the only eyewitness who testified, admitted she had falsely told the police and her relatives immediately after the offense that two black men had committed this murder during a robbery. She changed her account only after the police discovered her falsehoods and confronted her. There was ample basis for the jury to doubt her testimony, which was vital to the State's case, and the jury's deliberations and its notes suggest that it did. We conclude that the error was not harmless and that "a substantial right of the (appellant) was affected." *Schaffer,* 777 S.W.2d at 115; TEX.R.CRIM.EVID. 103(a).

Point of error three is sustained.

The judgment is reversed, and the cause is remanded.