COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-336-CR

 

 

KRISTOPHER KYLE RUSSELL                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 89TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

                                          BACKGROUND








Samantha Lezark was murdered
in her bedroom on the evening of January 5 or the morning of January 6,
2003.  Detective Tony Fox of the Wichita
Falls Police Department was assigned as lead investigator on the case.  The medical examiner determined the cause of
death to have been strangulation by a coaxial cable wrapped around her neck three
times and tied with a square knot.  A
bloody fire extinguisher lay next to Lezark=s body, and her head had contusions consistent with being hit by the
fire extinguisher.  There were no signs
of forced entry into the house.  

A palmprint on the coaxial
cable was identified as that of Appellant Kristopher Kyle Russell, and his
fingerprint and his DNA were found on the fire extinguisher.  Appellant=s partial latent thumbprint was also identified on a laser pointer
found on Lezark=s bed.  Appellant testified at trial that he had met
Lezark in an Internet chat room in late November 2002 and had entered into a
sexual relationship with her by mid-December. 


Two of Lezark=s neighbors testified they saw Appellant at her house on the afternoon
of January 5, and Appellant admitted he was there that afternoon and
evening.  A coworker of Lezark=s found her body the next morning when Lezark failed to report to
work.  A jury convicted Appellant of
first degree murder and assessed his sentence at ninety-nine years= confinement. 

                                               ISSUES








In two issues, Appellant
contends the trial court reversibly erred (1) by overruling his objections to
several lines of Abackdoor
hearsay@ testimony by Detective Fox and (2) by admitting DNA-sample swabs of
other potential suspects because the State failed to prove the tested DNA
samples were actually collected from the potential suspects in question.  We affirm.

                                   DISCUSSION

A.                
Backdoor
Hearsay

In his first issue, Appellant argues the trial
court abused its discretion by overruling his objections to testimony of
Detective Tony Fox that he Aruled
out@ other potential suspects and his basis
for doing so that included hearsay information provided by the suspects and
other witnesses at the scene and hearsay opinions of experts as to fingerprint
and DNA evidence.[2]  On each occasion, the prosecutor offered the
explanation that the testimony was admissible as Apart
of the investigation.@  Appellant complains that the trial court
likewise abused its discretion by allowing Fox to explain the underlying
hearsay details that constituted the basis for his arrest of Appellant, the
basis for probable cause, and the basis for his conclusion that Appellant was
the murderer.    








Appellant contends that the State was thus
improperly allowed to elicit Abackdoor
hearsay@
evidence.  That is, he contends that the
State was improperly permitted to get before the jury indirectly the substance
of out-of-court statements of witnesses and experts to prove the truth of that
evidence, i.e., that the evidence excluded other suspects and, therefore,
Appellant was guilty, under the guise that the information was merely part of
the investigation.        Hearsay is a statement, other than one
made by the declarant while testifying at a trial or hearing, offered in
evidence to prove the truth of the matter asserted.  Tex.
R. Evid. 801(d).  Hearsay is
generally inadmissible except as provided by the rules of evidence or
statute.  Tex. R. Evid. 802.  The hearsay rule may not
be circumvented by inference.  Schaffer
v. State, 777 S.W.2d 111, 113 (Tex. Crim. App. 1989).  Moreover, the hearsay prohibition cannot be
circumvented by eliciting the substance of the statement in indirect form.  Id.  Testimony as to information received from
other persons or testimony about the results of investigations made by other
persons, even when presented indirectly, is hearsay.  Id. (quoting McCormick on Evidence, ' 249, p. 735 (Cleary Rev., 3rd Ed. 1984)). 








Whether testimony violates
the hearsay prohibition necessarily turns on how strongly the content of an out‑of‑court
statement can be inferred from the context; the question is whether the
strength of the inference produces an Ainescapable conclusion@ that the evidence is being offered to prove the substance of an out‑of‑court
statement.  Head v. State, 4
S.W.3d 258, 261B62 (Tex.
Crim. App. 1999).  A[W]here there is an inescapable conclusion that a piece of evidence is
being offered to prove the truth of the statements made outside the courtroom,
a party may not circumvent the hearsay prohibition through artful questioning
designed to elicit hearsay indirectly.@  Id. at 264 (quoting Shaffer,
777 S.W.2d at 114).

@The phrase >inescapable conclusion= is not a talisman.  Rather, it
provides a useful shorthand for quantifying the strength of the inference
necessary to impute an improper purpose to the evidence.@  Id. at 263 n.3.   An analysis of whether the impermissible inference
is so overriding as to fall within the hearsay prohibition will necessarily
turn on the specific factual circumstances of a given case.  Id. at 262 n.4.  

A police officer=s testimony is not hearsay when it is offered for the purpose of
explaining how a defendant became a suspect rather than for the truth of the
matter asserted.  Dinkins v. State,
894 S.W.2d 330, 347 (Tex. Crim. App.), cert. denied, 516 U.S. 832
(1995).  In addition, an officer=s testimony is not hearsay when it is admitted, not for the truth, but
to establish the course of events and circumstances leading to a defendant=s arrest.  Thornton v. State,
994 S.W.2d 845, 854 (Tex. App.CFort Worth 1999, pet. ref=d).








Testimony by an officer that
he went to a certain place or performed a certain act in response to
generalized Ainformation
received@ is normally not considered hearsay because he should be allowed to
give some explanation for his behavior. 
But the officer Ashould not
be permitted to relate historical aspects of the case, replete with hearsay
statements in the form of complaints and reports on grounds that [he] was
entitled to tell the jury the information on which [he] acted.@  Shaffer, 777 S.W.2d at
114.  A[D]etails of the information received are considered hearsay and are
inadmissibleCunless the
officer=s conduct has been challenged . . . .@  Poindexter v. State,
153 S.W.3d 402, 408 n.21 (Tex. Crim. App. 2005).  

1.                 
Elimination of
other potential suspects

a.                  
The testimony








Detective Tony Fox testified for the State only
briefly on direct examination.  Fox
described the murder scene as it existed upon his arrival at Samantha Lezark=s house on the morning of January 6,
2003, including the condition of the body and the location and condition of
items at the scene.  He described the
coaxial cable around her neck and the fire extinguisher with blood on it lying
near her body.  Detective Fox also
related his activities in handling the body and evidence delivered for DNA and
fingerprint analysis.  He directed a
technician to collect specimens from those items for fingerprint analysis,
executed a search warrant for Appellant=s
fingerprints and palmprints, obtained Appellant=s
photograph and a thumbprint from Department of Public Safety records and a set
of fingerprints from the Department of Defense, and seized computers belonging
to the deceased and Appellant and submitted them for forensic testing. 

On cross-examination of Detective Fox, Appellant=s trial counsel began developing the
defense=s theory
of the case that other potential suspects could have committed the murder,
including Samantha Lezark=s
estranged husband, John Lezark, who had threatened her with violence, and John
Perez, who was the husband of Samantha Lezark=s
coworker and with whom she was having an affair.  On redirect examination, the prosecutor asked
Detective Fox whether and how he Aruled
out@ John Lezark and John Perez:

Q.  Did you investigate John Lezark as a possible
suspect?

 

            A.  Yes.

 

Q.  And did
you rule him out?

 

A.  Yes.

 

[DEFENSE COUNSEL]: 
Judge, I will object to that as hearsay. 
It=s a
hearsay conclusion based on things not shown in this courtroom.

 

[PROSECUTOR]: 
Judge, he=s just
saying what he did as a part of his investigation.








THE COURT: 
It will be overruled.

 

Q.  (BY
[PROSECUTOR])  How were you able to rule
him out?

 

A.  We spoke
to his ‑‑ the woman he lived with and when they said ‑‑
where they were at the day on the Sunday evening.  Also the evidence at the scene, there was no
DNA match or fingerprint evidence.

 

[DEFENSE COUNSEL]: 
I=ll object
to that, Judge.  Now, that=s hearsay.  And it=s
also violating a chain of custody requirement they=d
have to show.

 

[PROSECUTOR]: 
Judge, he said that he found none of the fingerprints there and nothing
connected him to that.  He=s just talking about what he did as a
part of his investigation.

 

THE COURT: 
Be overruled.

 

Q.  (BY
[PROSECUTOR])  So John Lezark gave prints
and blood and gave samples of everything that you ‑‑

 

A. 
Yes.  He cooperated with the
investigation.

 

Q. 
Okay.  And did you verify with his
wife [sic] that he was home all that day?

 

[DEFENSE COUNSEL]: 
Objection, hearsay.

 

THE COURT: 
That=s
overruled.

 

A. 
Yes.  He was home that day and
they also spoke to her mother Cynthia ‑‑

 

[DEFENSE COUNSEL]: 
I will object to that, Judge ‑‑

 

THE COURT: 
Sustained.

 

. . . .








Q.  (BY
[PROSECUTOR])  So his alibi checked out
then for that day?

 

[DEFENSE COUNSEL]: 
And I=ll object
to that as hearsay, Judge.

 

[PROSECUTOR]: 
Judge, this is just a part of his investigation.

 

THE COURT: 
It=s
overruled.

 

[PROSECUTOR]: 
Thank you, Your Honor.

 

            A.  Yes.

 

            Q.  (BY [PROSECUTOR])  Did you do the same thing for John Perez?

 

            A.
 Yes.

 

[DEFENSE COUNSEL]: 
Judge, I will object to that as hearsay. 
It=s calling
for a conclusion based on hearsay, what happened outside.

 

[PROSECUTOR]: 
Judge, it=s based
on his investigation.  He=s allowed to testify about his
investigation.

 

THE COURT: 
Overruled.

 

[PROSECUTOR]: 
Thank you, Your Honor.

 

Q.  (BY
[PROSECUTOR])  And so you ‑‑
as part of your investigation, Mr. Perez submitted samples and blood and
whatnot and fingerprints also?

 

A.  Yes.

 

Q.  And
cooperated fully?

 








A.  Yes.

 

Q.  And you
found no evidence to connect him to the crime?

 

[DEFENSE COUNSEL]: 
And I will object to that as hearsay, Judge.  And I=m
sorry I have to keep making these objections.

 

THE COURT: 
Overruled.

 

Q.  (BY
[PROSECUTOR])  But you ruled him out as a
suspect?

 

A.  Yes.

 

[DEFENSE COUNSEL]: 
Objection, hearsay.

 

THE COURT: 
Overruled. 

 

Appellant also made hearsay objections to similar
testimony from Detective Fox regarding his elimination of yet another man,
Christian Posh, as a potential suspect. 
On cross-examination, Detective Fox testified that his investigation
revealed that on January 1, 2003, four days before her death, the victim met a
man on the Internet, invited him to her home on the same day,  answered the door topless and blindfolded,
and remained blindfolded for the duration of the man=s
visit.  The following exchange occurred
on redirect examination:

Q. 
Detective Fox, defense counsel asked you on cross‑examination
about a ‑‑ a man who came over to Samantha[>s]
house on an occasion when she was blindfolded?

 

A.  Yes.

 








Q.  Do you
recall that question?

 

A.  Yes.

 

Q.  Were you
able to identify who that man was?

 

A.  Yes.

 

Q.  And what
is his name?

 

A. 
Christian Posh.

 

Q. 
Okay.  And did you interview him?

 

A.  Yes.

 

            Q.  Okay. 
And was his DNA submitted for testing?

 

            A.  Yes.

 

            Q.  And was he ruled out as a suspect?

 

[DEFENSE COUNSEL]: 
I object to that as hearsay, Judge, and they haven=t shown any chain of custody.

 

[PROSECUTOR]: 
Judge ‑‑

 

[DEFENSE COUNSEL]: 
It should be linked up to that.

 

[PROSECUTOR]: 
‑‑ he can testify as to whether or not he ruled him out as a
suspect.

 

THE COURT: 
That=s
overruled.

 

[PROSECUTOR]: 
Thank you.

 

Q.  (BY
[PROSECUTOR])  You may answer the
question.

 

A.  Yes,
sir.








Q.  He was
ruled out as a suspect?

 

A.  Yes. 

 

Some of the foregoing testimony is clearly
hearsay, namely, Detective Fox=s
testimony about his discussion with John Lezark=s
girlfriend; that testimony relates out-of-court statements for the sole purpose
of proving Lezark was somewhere other than the victim=s
home at the time of the killing.  See Tex. R. Evid. 801(d).  We hold the trial court abused its discretion
by allowing Detective Fox to testify about those conversations.








However, we disagree that
Detective Fox=s initial
answers to the questions, ADid you rule [John Lezark] out?,@ ADid you do
the same thing for John Perez?,@ and, as to Christian Posh, AHe was ruled out as a suspect?@ constituted hearsay.  The trial
court could reasonably have concluded that those questions, and Detective Fox=s responses to them, did not create a strong inference that any
particular out-of-court statements and information excluded those suspects nor
that they produced an Ainescapable
conclusion@ that the
evidence was being offered solely to prove the substance of information relied
on.  See Head, 4 S.W.3d at 261‑62.  We cannot conclude that the trial court
abused its discretion in allowing the jury to hear the disputed testimony.  Id.  
  As to the details upon which
Detective Fox stated he relied in ruling out those suspects,  Detective Fox testified over Appellant=s hearsay objection that he ruled out Lezark, Perez, and Posh as
suspects after they submitted DNA samples for testing.  This testimony implies the DNA tests failed
to match Lezark=s, Perez=s, and Posh=s DNA to the
DNA found at the crime scene.  Arguably,
the DNA test results, or the experts who performed the DNA analyses, are the
implied declarants; the lack of a DNA match is the implied matter asserted; and
the sole intent of the prosecution in pursuing that line of questioning was to
get that information before the jury.  

Assuming Detective Fox=s testimony was Abackdoor@ hearsay about the DNA test results and the trial court abused its
discretion by allowing him to answer these questions, any harm arising from the
error was cured when the expert who performed the DNA analyses later testified
that her tests ruled out Lezark, Perez, and Posh as contributors to the DNA
collected at the crime sceneCthe very same conclusion implicit in Detective Fox=s testimony.  See Reyes v.
State, 84 S.W.3d 633, 638 (Tex. Crim. App. 2002) (finding any error in
admission of evidence harmless if cumulative of evidence properly admitted
elsewhere).[3]








b.                 
Harm analysis

Having determined the trial
court abused its discretion by allowing Detective Fox to testify about hearsay
statements of John Lezark=s girlfriend,
we must conduct a harm analysis to determine whether the error calls for
reversal of the judgment.  Tex. R. App. P. 44.2.

The admission of otherwise
inadmissible hearsay is a nonconstitutional error.  Moon v. State, 44 S.W.3d 589, 594B95 (Tex. App.CFort Worth
2001, pet. ref=d).  Therefore, we apply rule 44.2(b) and
disregard the error if it did not affect Appellant=s substantial rights.  Tex. R. App. P. 44.2(b); see Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999); Coggeshall v. State,
961 S.W.2d 639, 642B43 (Tex.
App.CFort Worth 1998, pet. ref=d).  A substantial right is
affected when the error had a substantial and injurious effect or influence in
determining the jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d
at 643.  When making this determination,
we review the record as a whole.  See
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).








In this case, two witnesses
saw Appellant at the victim=s home on the evening of the murder, but Appellant, himself, also
testified he was there.  Appellant does
not dispute the evidence that he left his DNA and fingerprint on the bloody
fire extinguisher and his palm print on the coaxial cable with which the killer
strangled Samantha Lezark.  Nor does he
dispute that none of the DNA or fingerprint evidence connects John Lezark to
the crime scene.  In light of the other
evidence presented to the jury, Detective Fox=s hearsay testimony that John Lezark=s girlfriend vouched for his whereabouts on the night of the murder
pales to the point of insignificance.

Appellant cites several cases
where appellate courts held that the admission of hearsay evidence was
reversible error.  But in each of those
cases, the evidence in question directly implicated the defendant.  See, e.g., Schaffer, 777 S.W.2d
at 113B14 (reversing conviction when hearsay testimony directly refuted
defendant=s claim that
he was a confidential informant); Morin v. State, 960 S.W.2d 132, 138
(Tex. App.CCorpus
Christi 1997, no pet.) (reversing conviction when hearsay statement identified
defendant as party to murder);  Coots
v. State, 826 S.W.2d 955, 959 (Tex. App.CHouston [1st Dist.] 1992, no pet.) (reversing conviction where
backdoor hearsay identified defendant as the culprit).  By contrast, the hearsay statement in this
case did not directly implicate Appellant; rather, it exculpated John Lezark.  As the State argues, the hearsay statement
did not point the accusing finger at Appellant; thus, the cases cited by
Appellant are distinguishable.








We conclude that, in the
context of the entire case against Appellant, the trial court=s error in admitting the testimony in question did not have a
substantial or injurious effect on the jury=s verdict and did not affect Appellant=s substantial rights.  See
King, 953 S.W.2d at 271.  Thus, we
disregard the error,  see Tex. R. App. P. 44.2(b), and we
overrule this portion of Appellant=s first issue.

2.                 
The basis for
Appellant=s arrest

In the next part of his first issue, Appellant argues
the trial court abused its discretion by admitting more hearsay from Detective
Fox when the prosecutor asked him about the basis for arresting Appellant.  Appellant concedes he did not make a hearsay
objection to this line of testimony, but he contends error is nonetheless
preserved because a litigant need not repeat an objection when the trial court
has just overruled a valid objection to the same type of testimony.  We disagree.

To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling if they are not apparent from the
context of the request, objection, or motion. 
Tex. R. App. P.
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied, 526 U.S. 1070
(1999).








To support his argument that error was preserved despite
his failure to object at trial, Appellant cites Cardenas v. State, 787
S.W.2d 160, 162 (Tex. App.CHouston [1st
Dist.] 1990, pet ref=d).  In Cardenas, the court held that when
two witnesses, testifying one immediately after the other, introduced the same
hearsay statement into evidence, the defendant=s failure to object to the second witness=s testimony did not waive his timely hearsay objection to the first
witness=s testimony.  Id.  The court stated, A[I]n some circumstances, a defendant is not required to constantly
repeat an objection. One such circumstance is when the objection would be
futile because the court has just overruled a valid objection to the same
testimony.@  Id. (emphasis added).

Here, the trial court had not
Ajust overruled a valid objection to the same testimony@; thus, Cardenas is inapplicable.  Appellant implicitly urges us to extend the Cardenas
exception to cover not only the same testimony but also the same type
of testimony.  To adopt such an exception
would upset the well-settled rules for preserving error; thus, we decline to do
so.

Because Appellant did not
make a hearsay objection to this portion of Detective Fox=s testimony, we overrule the second part of his first issue.

3.                 
Detective Fox=s conclusion that Appellant murdered the victim








In the last part of his first issue, Appellant
argues the trial court abused its discretion by allowing Detective Fox to
testify that DNA from an unknown third person who was never identified, found
in scrapings from the victim=s
fingernails, did not change his conclusion that Appellant killed her.  Again, Appellant did not make a hearsay
objection to this testimony; therefore, he did not preserve his complaint for
our review, and we overrule the final part of his first issue. 

B.                
Admission of
DNA-sample swabs

In his second issue, Appellant argues the trial
court abused its discretion by admitting DNA-sample buccal swabs obtained from
John Perez, Christopher Posh, and four other men whom Samantha Lezark had met
on the Internet and who had been to her home, Clark, Ivy, Dickie, and Meiner,
because the State failed to prove the men from whom the analysts obtained the
swabs were who they claimed to be.  In
other words, the men who submitted DNA samples may have lied about their
identities, and the tested DNA may have come from persons unrelated to the
investigation.  This theoretical
possibility, argues Appellant, breaks the chain of custody and requires the
exclusion of the evidence.








Rule 901(a) provides that A[t]he
requirement of authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a finding that the
matter in question is what its proponent claims.@
Tex. R. Evid. 901(a).  It is well settled that minor theoretical
breaches in the chain of custody go to the weight rather than to the
admissibility of the evidence.  Hall
v. State, 13 S.W.3d 115, 120 (Tex. App.CFort Worth 2000), pet. dism=d as improvidently granted, 46 S.W.3d
264 (Tex. Crim. App. 2001).  Proof of the
beginning and end of the chain will support admission of the evidence barring
any showing of tampering or alteration.  See
Stoker v. State, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), cert.
denied, 498 U.S. 951 (1990).








Soibain Callahan, an
identification technician with the Wichita Falls Police Department, testified
that she obtained buccal swabs from Perez and Ivy at Detective Fox=s request, sealed them in envelopes, and turned them into the police
department=s property
room.  Another identification technician,
Michelle Hanson, testified that she took a buccal swab from Clark, which she
sealed and submitted to the property room. 
On cross-examination, Hanson admitted that she had no way to know that the
man from whom she took the sample was really Clark.  Elaine Rondez, a criminalist with the
Honolulu Police Department, testified that she took a buccal sample from Posh,
sealed it, and mailed it to a DNA lab in Texas. 
Before taking the sample, she took Posh=s photograph and photocopied his driver=s license.  Amber Moss, an
analyst for Orchid Cellmark, a DNA lab, testified that her supervisor collected
a buccal swab from Meiner. Appellant did not object to any of the foregoing
testimony regarding the men from whom the swabs were obtained.  The State offered no evidence regarding the
collection of Dickie=s DNA
sample.








Through Moss, the State
offered into evidence the buccal swabs purportedly taken from Perez, Ivy,
Clark, Posh, Meiner, and Dickie.  Except
with regard to Clark=s swab,[4]
Appellant objected that there was no evidence to show that the persons who
submitted the buccal swabs were who they claimed to be.  Appellant did not object when Moss testified
that DNA analysis ruled out each of the men as contributors to the DNA
collected from the crime scene.      We
hold that Appellant=s objections
to the admission of the buccal swabs relate to the weight of the evidence, not
its admissibility.  See Hall, 13
S.W.3d at 120.  The misidentification
posited by Appellant is purely theoretical, andCwith the possible exception of Clark=s swabsCthere is no
evidence of tampering or alteration.  See
Stoker, 788 S.W.2d at 10.  Moreover,
Appellant did not object to the technicians= testimony regarding their identification of the various men when they
took the samples, and that testimony established the beginning of the chain of
custody.  With regard to Clark=s swabs, Hanson testified she took one swab, but Moss testified she
received two swabs.  But Hanson testified
she sealed the swab in a box and positively identified the box, and Moss
identified the same box and testified it was sealed when she received it.  This kind of testimony does not amount to a
break in the chain of custody and goes only to the weight of the evidence, not
its admissibility.  See id. (holding
conflicting testimony regarding type of container in which evidence was sealed
went to weight and not admissibility when the actual container was positively
identified and its seal was unbroken).

Because Appellant=s objections to the buccal swabs related to their evidentiary weight
and not their admissibility, we hold the trial court did not abuse its
discretion by admitting them into evidence, and we overrule Appellant=s second issue.

                                             Conclusion

Having overruled both of
Appellant=s issues, we
affirm the trial court=s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL F:    LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March 6, 2008











[1]See Tex. R. App. P. 47.4.





[2]We
review the admission of evidence under an abuse of discretion standard.  Wyatt v. State, 23 S.W.3d 18, 29 (Tex.
Crim. App. 2000).

 





[3]The
trial court admitted Perez=s and Posh=s
DNA-sample swabs over Appellant=s objections; that ruling is
the subject of Appellant=s
second issue.  Appellant did not object
when the DNA analyst testified the DNA analysis excluded John Lezark, Perez,
and Posh as contributors of the DNA found at the crime scene.





[4]Appellant
objected to the admission of Clark=s swab because Hanson
testified she took one swab sample from Clark, but Moss testified she received
two swabs in Clark=s
envelope.