

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00010-CR

KENDRICK LADELL STARLING, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 21-0357X

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin
Concurring Opinion by Justice van Cleef

# MEMORANDUM OPINION

A Harrison County jury convicted Kendrick Ladell Starling of continuous sexual abuse of a child. After a punishment trial to the bench, Starling was sentenced to twenty-five years' imprisonment. On appeal, Starling argues that the trial court erred (1) by overruling his objections to the State's improper remarks about his counsel during closing argument and (2) by overruling his motion for a mistrial.

Assuming without deciding that the trial court should have sustained Starling's objections to the State's remarks during closing argument, we conclude that Starling was not harmed by the remarks. We also find that Starling failed to preserve his remaining complaint for our review. As a result, we affirm the trial court's judgment.

## I.      Starling Was Unharmed by Improper Closing Argument

In his first point of error, Starling argues that the trial court erred by overruling his objections to the State's closing argument. In support, Starling cites the following portion of the transcript:

> [BY THE STATE:]  Now in law school, we learn certain tricks, and that's that when the facts are in your favor, you argue the facts. When the law is in your favor, you argue the law. When neither are in your favor, you bang on the table, and that's what defense did in this case.
>
> [BY THE DEFENSE]:  Your Honor, that -- I'm going to object. That's striking at the shoulder of counsel. That's not a summation of the evidence.
>
> THE COURT:  Overruled. This is a closing argument . . . .
>
> [BY THE DEFENSE]:  But to talk about another attorney is inappropriate, Your Honor.
>
> THE COURT:  Overruled . . . .

[BY THE STATE]: And, like I said, that's what [defense counsel] did in this case.

[BY THE DEFENSE]: Once again, striking at my shoulder, Your Honor.

THE COURT: Overruled . . . .

[BY THE STATE]: He tried to make noise out of nothing. He tried to make irrelevant, seemingly really nothing to do with these cases, seem like big deals because he wanted to distract you from the facts, from the law, and that is his job, but that doesn't focus on what truly matters.[1]

Starling argues that, because the State's comments struck at him over the shoulders of his defense counsel, the trial court should have sustained his objections.

The standard of review is abuse of discretion. "Generally, the bounds of proper closing argument are left to the sound discretion of the trial court." *Milton v. State*, 572 S.W.3d 234, 240 (Tex. Crim. App. 2019). However, rather than deciding whether the trial court's rulings constituted an abuse of discretion, we have the option of deciding the case on whether there was any harm. *See Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007) ("Assuming, as the trial court did, that the prosecutor's comment was inappropriate, we next turn to the question of harm."); *see also Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) ("Assuming that the trial court should have sustained appellant's objection, we must determine whether the error warrants reversal."). That is the option we take here.

---

[1]"Texas courts have held that in some circumstances, a defendant is not required to constantly repeat an objection." *Lampkin v. State*, 470 S.W.3d 876, 901 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Cardenas v. State*, 787 S.W.2d 160, 162 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd)). "One such circumstance is when the objection would be futile because the court has just overruled a valid objection . . . ." *Id.* (quoting *Cardenas*, 787 S.W.2d at 162).

"Improper-argument error of this type is non-constitutional in nature, and a non-constitutional error 'that does not affect substantial rights must be disregarded.'" *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011) (citing TEX. R. APP. P. 44.2(b)).   In addressing whether Starling was harmed by the prosecutor's comments, we "look to [the following] three factors:  (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Mosley*, 983 S.W.2d at 259.  Because the first part of the harm analysis is an assessment of the seriousness of any alleged improper jury argument, we begin by reviewing the authorities on jury argument.  *Id.*; *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

Even closing argument has limits.  "Permissible jury argument falls into one of four areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement." *Gallo*, 239 S.W.3d at 767 (citing *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000)).  "[A] prosecutor runs a risk of improperly striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel *personally* and when the argument *explicitly* impugns defense counsel's character." *Mosley*, 983 S.W.2d at 259 (emphasis added).  That said, the Texas Court of Criminal Appeals has assumed error where the statements were not explicit, but, rather, attacked defense counsel via intimation and innuendo.  *Id.*  Regarding such arguments,

4

*Mosley* found "it is impossible to articulate a precise rule regarding" where the line should be drawn. *Id.*

Here, the State's comments fall on the milder side of things. The comments did "not directly accuse the defense attorney[] of lying, and . . . do not suggest that any evidence was manufactured." *Id.* at 260. Also, they did "not inject new facts into the record, and the jury [wa]s in a position to evaluate the truthfulness of the prosecutor's assertion." *Id.* As a result, while "[w]e do not condone the prosecutor's actions, . . . the severity of the misconduct [wa]s relatively small." *Id.* Because the severity of the misconduct was mild, the first factor does not favor Starling.

The second factor also does not favor Starling. "Instructions to the jury are generally considered sufficient to cure improprieties that occur during trial." *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). Here, the jury was instructed that "[s]tatements made by the lawyers are not evidence" and that "[e]vidence consists of the testimony of the witnesses and materials admitted into evidence." Because we presume that the jury followed the trial court's instructions, we conclude that the second factor weighs against a finding of harm. *See id.*; *De La Fuente v. State*, 432 S.W.3d 415, 425 (Tex. App.—San Antonio 2014, pet. ref'd) (finding a similar instruction "sufficient to cure any error" from prosecutor's improper comment).

The last factor—certainty of conviction absent the misconduct—requires us to examine the strength of the evidence. Starling argues that this factor tips the scale in his favor because this was "a classic 'he said/she said' case." We disagree.

"The testimony of a child victim alone is sufficient to support a conviction for . . . [continuous] sexual assault." *See Allen v. State*, 436 S.W.3d 815, 820 (Tex. App.—Texarkana 2014, pet. ref'd); TEX. CODE CRIM. PROC. ANN. art. 38.07.   The child victim in this case, Karmen,[2] was fifteen years old at the time of trial and testified that she was sexually abused by Starling from the time she was nine years old.  Karmen testified that, when she was nine, Starling would touch her vagina with his fingers while she was sleeping.  When she was ten, Starling showed her "porn videos of things he wanted to try" and "would start putting his mouth on [her] chest."   When she was "[a]round ten, going into 11," Karmen said that Starling made her perform oral sex on him and performed oral sex on her "[t]oo many [times] to count."  Karmen testified that, when she was "[e]leven, going on 12," Starling began having sex with her, sometimes more than once a week.  When she was fourteen, Starling penetrated her anus with his fingers and penis.  Karmen described Starling's abuse in detail for the jury.

Although Starling denied the allegations, Karmen's testimony was supported by Detriece Fisher, an eighth-grade counselor at Marshall Junior High School, who testified that Karmen said she had been having sex with Starling.  Christie Glenn-Moore, a Children's Advocacy Center (CAC) program director, testified that Karmen made the following statements during her CAC interview:

She stated that she was raped by Kendrick Starling.

She stated that there were different incidences of his penis entering in her vagina.  There were incidences of his penis entering her mouth.  There were instances of his penis in her anus.  There were instances of her being made to put -- to do oral sex, you know, which was her mouth to his penis.

[2]To protect her identity, we use a pseudonym for the child victim.  *See* TEX. R. APP. P. 9.10.

6

According to Glenn-Moore, Karmen testified that the different forms of sexual abuse occurred more than once and "started when she was nine." Susan Camazine, a sexual assault nurse examiner (SANE), also testified that Karmen said she was raped by Starling "more than 100 times since [she] was nine until 13" and testified about the details given to her by Karmen during the SANE examination.[3] Tracy Moore, a licensed professional counselor at the CAC, testified about Karmen's detailed statements of sexual abuse by Starling and her treatment plan.

Here, given the relatively mild nature of the State's remarks, the trial court's curative instruction, and the strength of the State's evidence, we find that Starling did not suffer non-constitutional harm. *See* TEX. R. APP. P. 44.2(b). As a result, we overrule his first point of error.

## II.     Starling Failed to Preserve His Remaining Point of Error

The record in this case shows that one of the jurors, Terri Sparks, remained in the jury room after a verdict was reached due to a medical issue. The trial court announced that the jury had reached a verdict of guilt, which prompted Starling to request that the jury be polled. All of the jurors, except for Sparks, answered that they had found Starling guilty of the offense beyond a reasonable doubt. As for Sparks, counsel agreed to allow the trial court to question her in the jury room and report her answer in open court. Then, the following occurred:

> THE COURT: For the record, the Court has questioned Ms. Sparks, and she is unable to respond at this time. She indicates I can't do this, so we have EMT's checking on her health at this time.
>
> We'll be in recess.

---

[3] In support of his defense, Starling hired an expert witness who had not met Karmen to contradict Camazine's methodology and SANE report.

(Recess taken.)

THE COURT:  All right.  We are back on the record.

Ms. Sparks indicated that is not her verdict, and as such, we do not have a verdict in this case, and so based on what the EMT's have indicated, we will be recessing, and I will allow her some time to recuperate, and then they will begin deliberations again in this matter.

. . . .

[BY THE DEFENSE]:  Your Honor, I would ask the Court to declare a mistrial.  She -- and I understand they still need to deliberate; unfortunately, the medical issue she is unable to continue.

You would be asking them to put -- it could be days, hopefully not weeks, but it could be a significant amount of time before she may be able to participate again.

That would be -- I do not believe that would be fair and due process, and so I ask the Court to declare a mistrial based upon you would be ordering them to deliberate again and continue to deliberate, and she cannot do that.

THE COURT:  Actually I think we're -- I'm going to deny your motion for a mistrial, and I'm going to -- I mean, I think we're going to start again Monday.  I'll give her through the weekend, and we'll see how she's doing at that time, and we'll resume deliberations at that time.

The trial court discharged the jury with instructions to return after the weekend.[4]  When the trial reconvened, the trial court instructed the jury to resume deliberation because its prior verdict was not unanimous.  Following those deliberations, the jury returned a unanimous verdict of guilt, as indicated by a second jury poll.

---

[4]"The State and the defendant each have the right to have the jury polled, which is done by calling separately the name or identification number of each juror and asking the juror if the verdict is the juror's."  TEX. CODE CRIM. PROC. ANN. art. 37.05(a) (Supp.).  "[I]f any juror answers in the negative, the jury shall retire again to consider its verdict."  *Id.*

At trial, Starling sought a mistrial on the ground that a lengthy delay in the trial would be unfair and could violate his due process rights. On appeal, Starling argues that the trial court's failure to grant a mistrial was an act that had a coercive effect on jury deliberation. The State argues that Starling did not preserve his appellate argument for our review, and we agree.

A "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Swain v. State*, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005). As stated in *Resendez v. State*, 306 S.W.3d 308 (Tex. Crim. App. 2009),

> Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."

*Id.* at 312 (quoting TEX. R. APP. P. 33.1(a)(1)(A)).

"The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; [and] (2) to give opposing counsel the opportunity to respond to the complaint." *Id.* As explained in *Resendez*,

> Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

Because Starling's trial objection did not notify the trial court of any complaint regarding a

9

coercive effect on jury deliberation, we find that Starling's remaining appellate argument is unpreserved. As a result, we overrule it.[5]

## III. Disposition

We affirm the trial court's judgment.


Jeff Rambin
Justice



CONCURRING OPINION

In Section I of the majority opinion, we assume that defense counsel's objections should have been sustained and turn to the question of harm. The majority then addresses the three *Mosely* factors. I agree with the majority's analysis of the first and third factors. Regarding the second factor, I do not find a curative instruction. The State's comments, in sum, accused defense counsel of misdirection, twice. There was no curative instruction from the trial court in direct response to the State's statements because Starling's objections were overruled. The later, standard instructions to the jury that "[s]tatements made by the lawyers are not evidence" and that "[e]vidence consists of the testimony of the witnesses and materials admitted into evidence" did not address the improper argument because that argument had nothing to do with facts or evidence.

---

[5]To the extent that Starling's brief raises a challenge to the trial court's denial of his motion for a mistrial, it is overruled because "[t]he trial court is not bound to declare a mistrial at the first sign of jury impasse, and there is no set time for jury deliberation." *Fryer v. State*, 580 S.W.3d 300, 306 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

10

Nonetheless, the majority correctly analyzes the first and third factors, and the third factor weighs heavily against Appellant's point of error.  I therefore join in the majority's conclusion.

I also join in the balance of the majority opinion.


Charles van Cleef
Justice

Date Submitted:    August 29, 2023
Date Decided:      August 30, 2023

Do Not Publish

11