

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-06-336-CR

KRISTOPHER KYLE RUSSELL                                          APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### BACKGROUND

Samantha Lezark was murdered in her bedroom on the evening of January 5 or the morning of January 6, 2003. Detective Tony Fox of the Wichita Falls Police Department was assigned as lead investigator on the case. The medical examiner determined the cause of death to have been strangulation

------------

[1]*See* TEX. R. APP. P. 47.4.

by a coaxial cable wrapped around her neck three times and tied with a square knot. A bloody fire extinguisher lay next to Lezark's body, and her head had contusions consistent with being hit by the fire extinguisher. There were no signs of forced entry into the house.

A palmprint on the coaxial cable was identified as that of Appellant Kristopher Kyle Russell, and his fingerprint and his DNA were found on the fire extinguisher. Appellant's partial latent thumbprint was also identified on a laser pointer found on Lezark's bed. Appellant testified at trial that he had met Lezark in an Internet chat room in late November 2002 and had entered into a sexual relationship with her by mid-December.

Two of Lezark's neighbors testified they saw Appellant at her house on the afternoon of January 5, and Appellant admitted he was there that afternoon and evening. A coworker of Lezark's found her body the next morning when Lezark failed to report to work. A jury convicted Appellant of first degree murder and assessed his sentence at ninety-nine years' confinement.

**ISSUES**

In two issues, Appellant contends the trial court reversibly erred (1) by overruling his objections to several lines of "backdoor hearsay" testimony by Detective Fox and (2) by admitting DNA-sample swabs of other potential

2

suspects because the State failed to prove the tested DNA samples were actually collected from the potential suspects in question. We affirm.

**DISCUSSION**

**A.     Backdoor Hearsay**

In his first issue, Appellant argues the trial court abused its discretion by overruling his objections to testimony of Detective Tony Fox that he "ruled out" other potential suspects and his basis for doing so that included hearsay information provided by the suspects and other witnesses at the scene and hearsay opinions of experts as to fingerprint and DNA evidence.[2] On each occasion, the prosecutor offered the explanation that the testimony was admissible as "part of the investigation." Appellant complains that the trial court likewise abused its discretion by allowing Fox to explain the underlying hearsay details that constituted the basis for his arrest of Appellant, the basis for probable cause, and the basis for his conclusion that Appellant was the murderer.

Appellant contends that the State was thus improperly allowed to elicit "backdoor hearsay" evidence. That is, he contends that the State was

_____

[2]We review the admission of evidence under an abuse of discretion standard. *Wyatt v. State*, 23 S.W.3d 18, 29 (Tex. Crim. App. 2000).

improperly permitted to get before the jury indirectly the substance of out-of-court statements of witnesses and experts to prove the truth of that evidence, i.e., that the evidence excluded other suspects and, therefore, Appellant was guilty, under the guise that the information was merely part of the investigation.

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally inadmissible except as provided by the rules of evidence or statute. TEX. R. EVID. 802. The hearsay rule may not be circumvented by inference. *Schaffer v. State,* 777 S.W.2d 111, 113 (Tex. Crim. App. 1989). Moreover, the hearsay prohibition cannot be circumvented by eliciting the substance of the statement in indirect form*. Id.* Testimony as to information received from other persons or testimony about the results of investigations made by other persons, even when presented indirectly, is hearsay. *Id.* (quoting MCCORMICK ON EVIDENCE, § 249, p. 735 (Cleary Rev., 3rd Ed. 1984)).

Whether testimony violates the hearsay prohibition necessarily turns on how strongly the content of an out-of-court statement can be inferred from the context; the question is whether the strength of the inference produces an "inescapable conclusion" that the evidence is being offered to prove the substance of an out-of-court statement. *Head v. State,* 4 S.W.3d 258, 261–62

4

(Tex. Crim. App. 1999). "[W]here there is an inescapable conclusion that a piece of evidence is being offered to prove the truth of the statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly." *Id.* at 264 (quoting *Shaffer*, 777 S.W.2d at 114).

"The phrase 'inescapable conclusion' is not a talisman. Rather, it provides a useful shorthand for quantifying the strength of the inference necessary to impute an improper purpose to the evidence." *Id.* at 263 n.3. An analysis of whether the impermissible inference is so overriding as to fall within the hearsay prohibition will necessarily turn on the specific factual circumstances of a given case. *Id.* at 262 n.4.

A police officer's testimony is not hearsay when it is offered for the purpose of explaining how a defendant became a suspect rather than for the truth of the matter asserted. *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App.), *cert. denied*, 516 U.S. 832 (1995). In addition, an officer's testimony is not hearsay when it is admitted, not for the truth, but to establish the course of events and circumstances leading to a defendant's arrest. *Thornton v. State*, 994 S.W.2d 845, 854 (Tex. App.—Fort Worth 1999, pet. ref'd).

Testimony by an officer that he went to a certain place or performed a certain act in response to generalized "information received" is normally not considered hearsay because he should be allowed to give some explanation for his behavior. But the officer "should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports on grounds that [he] was entitled to tell the jury the information on which [he] acted." *Shaffer*, 777 S.W.2d at 114. "[D]etails of the information received are considered hearsay and are inadmissible—unless the officer's conduct has been challenged . . . ." *Poindexter v. State*, 153 S.W.3d 402, 408 n.21 (Tex. Crim. App. 2005).

### 1. Elimination of other potential suspects

#### a. The testimony

Detective Tony Fox testified for the State only briefly on direct examination. Fox described the murder scene as it existed upon his arrival at Samantha Lezark's house on the morning of January 6, 2003, including the condition of the body and the location and condition of items at the scene. He described the coaxial cable around her neck and the fire extinguisher with blood on it lying near her body. Detective Fox also related his activities in handling the body and evidence delivered for DNA and fingerprint analysis. He directed a technician to collect specimens from those items for fingerprint analysis,

6

executed a search warrant for Appellant's fingerprints and palmprints, obtained Appellant's photograph and a thumbprint from Department of Public Safety records and a set of fingerprints from the Department of Defense, and seized computers belonging to the deceased and Appellant and submitted them for forensic testing.

On cross-examination of Detective Fox, Appellant's trial counsel began developing the defense's theory of the case that other potential suspects could have committed the murder, including Samantha Lezark's estranged husband, John Lezark, who had threatened her with violence, and John Perez, who was the husband of Samantha Lezark's coworker and with whom she was having an affair. On redirect examination, the prosecutor asked Detective Fox whether and how he "ruled out" John Lezark and John Perez:

> Q. Did you investigate John Lezark as a possible suspect?
>
> A. Yes.
>
> Q. And did you rule him out?
>
> A. Yes.
>
> [DEFENSE COUNSEL]: Judge, I will object to that as hearsay. It's a hearsay conclusion based on things not shown in this courtroom.
>
> [PROSECUTOR]: Judge, he's just saying what he did as a part of his investigation.

7

THE COURT:  It will be overruled.

Q.  (BY [PROSECUTOR])  How were you able to rule him out?

A.  We spoke to his -- the woman he lived with and when they said -- where they were at the day on the Sunday evening. Also the evidence at the scene, there was no DNA match or fingerprint evidence.

[DEFENSE COUNSEL]:  I'll object to that, Judge.  Now, that's hearsay.  And it's also violating a chain of custody requirement they'd have to show.

[PROSECUTOR]:  Judge, he said that he found none of the fingerprints there and nothing connected him to that.  He's just talking about what he did as a part of his investigation.

THE COURT:  Be overruled.

Q.  (BY [PROSECUTOR])  So John Lezark gave prints and blood and gave samples of everything that you --

A.  Yes.  He cooperated with the investigation.

Q.  Okay.  And did you verify with his wife [sic] that he was home all that day?

[DEFENSE COUNSEL]:  Objection, hearsay.

THE COURT:  That's overruled.

A.  Yes.  He was home that day and they also spoke to her mother Cynthia --

[DEFENSE COUNSEL]:  I will object to that, Judge --

THE COURT:  Sustained.

. . . .

8

Q. (BY [PROSECUTOR]) So his alibi checked out then for that day?

[DEFENSE COUNSEL]: And I'll object to that as hearsay, Judge.

[PROSECUTOR]: Judge, this is just a part of his investigation.

THE COURT: It's overruled.

[PROSECUTOR]: Thank you, Your Honor.

A. Yes.

Q. (BY [PROSECUTOR]) Did you do the same thing for John Perez?

A. Yes.

[DEFENSE COUNSEL]: Judge, I will object to that as hearsay. It's calling for a conclusion based on hearsay, what happened outside.

[PROSECUTOR]: Judge, it's based on his investigation. He's allowed to testify about his investigation.

THE COURT: Overruled.

[PROSECUTOR]: Thank you, Your Honor.

Q. (BY [PROSECUTOR]) And so you -- as part of your investigation, Mr. Perez submitted samples and blood and whatnot and fingerprints also?

A. Yes.

Q. And cooperated fully?

9

A. Yes.

Q. And you found no evidence to connect him to the crime?

[DEFENSE COUNSEL]: And I will object to that as hearsay, Judge. And I'm sorry I have to keep making these objections.

THE COURT: Overruled.

Q. (BY [PROSECUTOR]) But you ruled him out as a suspect?

A. Yes.

[DEFENSE COUNSEL]: Objection, hearsay.

THE COURT: Overruled.

Appellant also made hearsay objections to similar testimony from Detective Fox regarding his elimination of yet another man, Christian Posh, as a potential suspect. On cross-examination, Detective Fox testified that his investigation revealed that on January 1, 2003, four days before her death, the victim met a man on the Internet, invited him to her home on the same day, answered the door topless and blindfolded, and remained blindfolded for the duration of the man's visit. The following exchange occurred on redirect examination:

Q. Detective Fox, defense counsel asked you on cross-examination about a -- a man who came over to Samantha['s] house on an occasion when she was blindfolded?

A. Yes.

Q. Do you recall that question?

A. Yes.

Q. Were you able to identify who that man was?

A. Yes.

Q. And what is his name?

A. Christian Posh.

Q. Okay. And did you interview him?

A. Yes.

Q. Okay. And was his DNA submitted for testing?

A. Yes.

Q. And was he ruled out as a suspect?

[DEFENSE COUNSEL]: I object to that as hearsay, Judge, and they haven't shown any chain of custody.

[PROSECUTOR]: Judge --

[DEFENSE COUNSEL]: It should be linked up to that.

[PROSECUTOR]: -- he can testify as to whether or not he ruled him out as a suspect.

THE COURT: That's overruled.

[PROSECUTOR]: Thank you.

Q. (BY [PROSECUTOR]) You may answer the question.

A. Yes, sir.

11

Q. He was ruled out as a suspect?

A. Yes.

Some of the foregoing testimony is clearly hearsay, namely, Detective Fox's testimony about his discussion with John Lezark's girlfriend; that testimony relates out-of-court statements for the sole purpose of proving Lezark was somewhere other than the victim's home at the time of the killing. *See* TEX. R. EVID. 801(d). We hold the trial court abused its discretion by allowing Detective Fox to testify about those conversations.

However, we disagree that Detective Fox's initial answers to the questions, "Did you rule [John Lezark] out?," "Did you do the same thing for John Perez?," and, as to Christian Posh, "He was ruled out as a suspect?" constituted hearsay. The trial court could reasonably have concluded that those questions, and Detective Fox's responses to them, did not create a strong inference that any particular out-of-court statements and information excluded those suspects nor that they produced an "inescapable conclusion" that the evidence was being offered solely to prove the substance of information relied on. *See Head,* 4 S.W.3d at 261-62. We cannot conclude that the trial court abused its discretion in allowing the jury to hear the disputed testimony. *Id.*

As to the details upon which Detective Fox stated he relied in ruling out those suspects, Detective Fox testified over Appellant's hearsay objection that

12

he ruled out Lezark, Perez, and Posh as suspects after they submitted DNA samples for testing. This testimony implies the DNA tests failed to match Lezark's, Perez's, and Posh's DNA to the DNA found at the crime scene. Arguably, the DNA test results, or the experts who performed the DNA analyses, are the implied declarants; the lack of a DNA match is the implied matter asserted; and the sole intent of the prosecution in pursuing that line of questioning was to get that information before the jury.

Assuming Detective Fox's testimony was "backdoor" hearsay about the DNA test results and the trial court abused its discretion by allowing him to answer these questions, any harm arising from the error was cured when the expert who performed the DNA analyses later testified that her tests ruled out Lezark, Perez, and Posh as contributors to the DNA collected at the crime scene—the very same conclusion implicit in Detective Fox's testimony. *See Reyes v. State*, 84 S.W.3d 633, 638 (Tex. Crim. App. 2002) (finding any error in admission of evidence harmless if cumulative of evidence properly admitted elsewhere).[3]

---

[3]The trial court admitted Perez's and Posh's DNA-sample swabs over Appellant's objections; that ruling is the subject of Appellant's second issue. Appellant did not object when the DNA analyst testified the DNA analysis excluded John Lezark, Perez, and Posh as contributors of the DNA found at the crime scene.

### b. Harm analysis

Having determined the trial court abused its discretion by allowing Detective Fox to testify about hearsay statements of John Lezark's girlfriend, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. TEX. R. APP. P. 44.2.

The admission of otherwise inadmissible hearsay is a nonconstitutional error. *Moon v. State*, 44 S.W.3d 589, 594–95 (Tex. App.—Fort Worth 2001, pet. ref'd). Therefore, we apply rule 44.2(b) and disregard the error if it did not affect Appellant's substantial rights. TEX. R. APP. P. 44.2(b); *see Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *Coggeshall v. State*, 961 S.W.2d 639, 642–43 (Tex. App.—Fort Worth 1998, pet. ref'd). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Coggeshall,* 961 S.W.2d at 643. When making this determination, we review the record as a whole. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In this case, two witnesses saw Appellant at the victim's home on the evening of the murder, but Appellant, himself, also testified he was there.

14

Appellant does not dispute the evidence that he left his DNA and fingerprint on the bloody fire extinguisher and his palm print on the coaxial cable with which the killer strangled Samantha Lezark. Nor does he dispute that none of the DNA or fingerprint evidence connects John Lezark to the crime scene. In light of the other evidence presented to the jury, Detective Fox's hearsay testimony that John Lezark's girlfriend vouched for his whereabouts on the night of the murder pales to the point of insignificance.

Appellant cites several cases where appellate courts held that the admission of hearsay evidence was reversible error. But in each of those cases, the evidence in question directly implicated the defendant. *See, e.g., Schaffer*, 777 S.W.2d at 113–14 (reversing conviction when hearsay testimony directly refuted defendant's claim that he was a confidential informant); *Morin v. State*, 960 S.W.2d 132, 138 (Tex. App.—Corpus Christi 1997, no pet.) (reversing conviction when hearsay statement identified defendant as party to murder); *Coots v. State*, 826 S.W.2d 955, 959 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (reversing conviction where backdoor hearsay identified defendant as the culprit). By contrast, the hearsay statement in this case did not directly implicate Appellant; rather, it exculpated John Lezark. As the State argues, the hearsay statement did not point the accusing finger at Appellant; thus, the cases cited by Appellant are distinguishable.

We conclude that, in the context of the entire case against Appellant, the trial court's error in admitting the testimony in question did not have a substantial or injurious effect on the jury's verdict and did not affect Appellant's substantial rights. *See King*, 953 S.W.2d at 271. Thus, we disregard the error, *see* TEX. R. APP. P. 44.2(b), and we overrule this portion of Appellant's first issue.

## 2. The basis for Appellant's arrest

In the next part of his first issue, Appellant argues the trial court abused its discretion by admitting more hearsay from Detective Fox when the prosecutor asked him about the basis for arresting Appellant. Appellant concedes he did not make a hearsay objection to this line of testimony, but he contends error is nonetheless preserved because a litigant need not repeat an objection when the trial court has just overruled a valid objection to the same type of testimony. We disagree.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999).

16

To support his argument that error was preserved despite his failure to object at trial, Appellant cites *Cardenas v. State*, 787 S.W.2d 160, 162 (Tex. App.—Houston [1st Dist.] 1990, pet ref'd). In *Cardenas*, the court held that when two witnesses, testifying one immediately after the other, introduced the same hearsay statement into evidence, the defendant's failure to object to the second witness's testimony did not waive his timely hearsay objection to the first witness's testimony. *Id.* The court stated, "[I]n some circumstances, a defendant is not required to constantly repeat an objection. One such circumstance is when the objection would be futile because the court has just overruled a valid objection to the *same* testimony." *Id.* (emphasis added).

Here, the trial court had not "just overruled a valid objection to the same testimony"; thus, *Cardenas* is inapplicable. Appellant implicitly urges us to extend the *Cardenas* exception to cover not only the *same* testimony but also the same *type* of testimony. To adopt such an exception would upset the well-settled rules for preserving error; thus, we decline to do so.

Because Appellant did not make a hearsay objection to this portion of Detective Fox's testimony, we overrule the second part of his first issue.

### 3. Detective Fox's conclusion that Appellant murdered the victim

In the last part of his first issue, Appellant argues the trial court abused its discretion by allowing Detective Fox to testify that DNA from an unknown

17

third person who was never identified, found in scrapings from the victim's fingernails, did not change his conclusion that Appellant killed her. Again, Appellant did not make a hearsay objection to this testimony; therefore, he did not preserve his complaint for our review, and we overrule the final part of his first issue.

## B.    Admission of DNA-sample swabs

In his second issue, Appellant argues the trial court abused its discretion by admitting DNA-sample buccal swabs obtained from John Perez, Christopher Posh, and four other men whom Samantha Lezark had met on the Internet and who had been to her home, Clark, Ivy, Dickie, and Meiner, because the State failed to prove the men from whom the analysts obtained the swabs were who they claimed to be. In other words, the men who submitted DNA samples may have lied about their identities, and the tested DNA may have come from persons unrelated to the investigation. This theoretical possibility, argues Appellant, breaks the chain of custody and requires the exclusion of the evidence.

Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). It is well settled that minor theoretical breaches

18

in the chain of custody go to the weight rather than to the admissibility of the evidence. *Hall v. State,* 13 S.W.3d 115, 120 (Tex. App.—Fort Worth 2000), *pet. dism'd as improvidently granted*, 46 S.W.3d 264 (Tex. Crim. App. 2001). Proof of the beginning and end of the chain will support admission of the evidence barring any showing of tampering or alteration. *See Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), *cert. denied*, 498 U.S. 951 (1990).

Soibain Callahan, an identification technician with the Wichita Falls Police Department, testified that she obtained buccal swabs from Perez and Ivy at Detective Fox's request, sealed them in envelopes, and turned them into the police department's property room. Another identification technician, Michelle Hanson, testified that she took a buccal swab from Clark, which she sealed and submitted to the property room. On cross-examination, Hanson admitted that she had no way to know that the man from whom she took the sample was really Clark. Elaine Rondez, a criminalist with the Honolulu Police Department, testified that she took a buccal sample from Posh, sealed it, and mailed it to a DNA lab in Texas. Before taking the sample, she took Posh's photograph and photocopied his driver's license. Amber Moss, an analyst for Orchid Cellmark, a DNA lab, testified that her supervisor collected a buccal swab from Meiner. Appellant did not object to any of the foregoing testimony regarding the men

19

from whom the swabs were obtained. The State offered no evidence regarding the collection of Dickie's DNA sample.

Through Moss, the State offered into evidence the buccal swabs purportedly taken from Perez, Ivy, Clark, Posh, Meiner, and Dickie. Except with regard to Clark's swab,[4] Appellant objected that there was no evidence to show that the persons who submitted the buccal swabs were who they claimed to be. Appellant did not object when Moss testified that DNA analysis ruled out each of the men as contributors to the DNA collected from the crime scene.

We hold that Appellant's objections to the admission of the buccal swabs relate to the weight of the evidence, not its admissibility. *See Hall,* 13 S.W.3d at 120. The misidentification posited by Appellant is purely theoretical, and—with the possible exception of Clark's swabs—there is no evidence of tampering or alteration. *See Stoker*, 788 S.W.2d at 10. Moreover, Appellant did not object to the technicians' testimony regarding their identification of the various men when they took the samples, and that testimony established the beginning of the chain of custody. With regard to Clark's swabs, Hanson testified she took one swab, but Moss testified she received two swabs. But

---

[4]Appellant objected to the admission of Clark's swab because Hanson testified she took one swab sample from Clark, but Moss testified she received two swabs in Clark's envelope.

Hanson testified she sealed the swab in a box and positively identified the box, and Moss identified the same box and testified it was sealed when she received it. This kind of testimony does not amount to a break in the chain of custody and goes only to the weight of the evidence, not its admissibility. *See id.* (holding conflicting testimony regarding type of container in which evidence was sealed went to weight and not admissibility when the actual container was positively identified and its seal was unbroken).

Because Appellant's objections to the buccal swabs related to their evidentiary weight and not their admissibility, we hold the trial court did not abuse its discretion by admitting them into evidence, and we overrule Appellant's second issue.

### Conclusion

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL F:   LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED:  March 6, 2008